JAMES J. EGAN

v.

CITY OF CHICAGO.

CORPORATE PURPOSE.—City authorities are clothed with ample power to use all reasonable and proper means to protect the persons and property of citizens, and to this end the city has power to inquire into the manner of the erection of buildings within its limits, to determine whether or not the lives and property of its citizens are in danger, and having this power, the employment of competent persons to make such inquiry is a corporate purpose, and for such employment when properly authorized an action may be maintained. The fact that the building examined is being erected by the United States government, upon its own land, has no bearing upon the action of the city authorizing such examination, the measures thereafter to be adopted by the city having no reference to the employment of persons to make the examination.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Opinion filed January 7, 1880.

Mr. PLINY B. SMITH, for appellant; argued that no objection can be taken as to the *manner* of appointment of the commission; it may be done by ordinance, resolution or vote, and a contract made by persons thus appointed will bind the corporation, and cited Dillon on Mun. Cor. § 374; Alton v. Mulledy, 21 Ill. 76; Rev. Stat. 1874, Chap. 24, § 64.

On the question of corporate purpose, the determination of the legislative body of the city is conclusive unless it contravenes some constitutional provision or some plain requirement of good government: Dillon on Mun. Cor. § 58; Cooley on Con. Lim. 488; Greely v. The People, 60 Ill. 19; C. D. & V. R. R. Co. v. Smith, 62 Ill. 268; Daniels v. Hilgard, 77 Ill. 640; Covington v. East St. Louis, 78 Ill. 548; State v. Swearington, 12 Geo. 23.

As to police power of city council: Rev. Stat. 1874, 221; Lake View v. Rose Hill Cem. Co. 71 Ill. 191.

As to what is included in the term "corporate purposes": Taylor v. Thompson, 42 Ill. 9; Henderson v. Lagow, 42 Ill. 360; State v. Sullivan, 43 Ill. 412; C. D. & V. R. R. Co. v. Smith, 62 Ill. 268; Burr v. Carbondale, 76 Ill. 455; Hensley Township v. The People, 84 Ill. 544; Q. M. & P. R. R. Co. v. Morris, 84 Ill. 410; Booth v. Town of Woodbury, 32 Conn. 128; Kirby v. Shaw, 19 Pa. St. 258; Thomas v. Leland, 24 Wend. 67.

Mr. JULIUS S. GRINNELL, for appellee; that the federal government has exclusive control over the premises, and they are not subject to control or regulation by the city, cited Federal Constitution, Art. 1, § 8; 1 Kent's Com. *429; Commonwealth v. Young, Brightly, 302; Commonwealth v. Clary, 8 Mass. 72; United States v. Turney, 1 Bond. 571; United States v. Cornell, 2 Mason, 60; United States v. Ames, 1 W. & M. 76; United States v. Davis, 5 Mason, 356.

The act of the common council was not within the scope of its corporate powers, and was *ultra vires:* Brice on Ultra Vires,

43; Dillon on Mun. Cor. § 55; Cooley on Con. Lim. 235; City of Alton v. Ætna Ins. Co. 82 Ill. 45; Taylor v. Thompson, 42 Ill. 9; Chicago v. Turner, 80 Ill. 419.

Courts adopt a strict construction of corporate powers: Mintum v. Larne, 23 How. 435.

The officers of a corporation cannot bind it by contract beyond the scope of its corporate powers: Miller v. Goodwin, 70 Ill. 659; City of Alton v. Ætna Ins. Co. 82 Ill. 45.

Every one who deals with a municipal corporation must see that it has the power to make such contracts: Law v. Turner, 87 Ill. 385; Burr v. City of Carbondale, 76 Ill. 455; Dillon on Mun. Cor. 382.

WILSON, J. This is a suit brought by appellant Egan against the City of Chicago, to recover the value of his services and labor in examining the foundation walls of the Federal building in process of erection by the U. S. Government, in the city of Chicago, the services having been performed by order of the mayor, pursuant to a resolution of the City Council.

The declaration alleges in substance that on the 19th day of June, 1875, the United States owned, possessed and controlled, in the city of Chicago a block or piece of land bounded by Clark, Adams, Dearborn and Jackson streets, the title to which was acquired by the United States by virtue of an act of the legislature of the State of Illinois; that there was then in process of erection on the land by the United States Government, and to be devoted to the public use of the citizens of the city of Chicago, and others having business with the United States and in the Federal Courts; that the building was to be of great magnitude and its walls of great thickness and weight; that it was of public rumor that the foundations of the building were unsafe and insufficient for its support; that thereupon, the City Council passed a resolution empowering and directing the mayor to appoint a commission of architects to examine the foundations of the building, and to report to the council in writing whether, in their opinion, the building could be safely completed on said foundations; that

Egan v. City of Chicago.

appellee was one of several architects appointed by the mayor pursuant to the resolution of the council; that under said appointment appellant performed services in examining the foundations of the building, and that the commission duly made a report in writing to the City Council, in accordance with the terms of the resolution authorizing their appointment. The declaration also alleges that prior to the appointment of the commission an appropriation had been made by the City Council to defray the expenses incurred, and that plaintiff's services were reasonably worth $500.

A general demurrer to the declaration was sustained by the court, and the plaintiff electing to stand by his declaration, judgment was rendered for the defendant, to which ruling of the court in sustaining the demurrer and entering judgment for defendant, the plaintiff excepted.

The plaintiff brings the case to this court by appeal, and assigns for error—First, that the court erred in sustaining the demurrer to the declaration. Second, the court erred in rendering judgment in favor of the defendant and against the plaintiff.

The allegations in the declaration being admitted by the demurrer to be true, we have only to consider whether they show a right of action in the plaintiff.

It is insisted by the defendant that the resolution of the City Council undertook to authorize an act that was not within the scope of a corporate purpose; that the subject thereof was beyond the power or control of the corporate authorities, and was *ultra vires* and void. And in support of this position it is urged that inasmuch as the United States had duly acquired title to the block of land in question for the purpose of erecting a government building thereon to be used for court rooms, post office, custom house and other Federal offices required for the public service, their possession and control of the premises was exclusive both of State and municipal authorities; that the city could not interfere with the building either in respect to the manner of its construction, the thickness of its walls, or the sufficiency of its foundations; and that if the commission of architects had condemned the latter as unsafe and dangerous, the city authorities were powerless to remedy the evil.

It is undoubtedly true that the United States, upon acquiring title to the property, became invested with the exclusive legislative jurisdiction and control over the same, the State of Illinois having concurrent jurisdiction to the extent of the right to serve process and arrest criminals found thereon. 1 Kent's Com. 429; United States v. Cornell, 2 Mason, 60. And it would doubtless follow that if the resolution of the City Council and the appointment by the mayor of the commission of architects was but a preliminary step towards an actual interference with the work on the building or its foundations, and if no other purpose was intended or could be subserved by their action, the appointment of the commission would be unauthorized, and beyond the scope of the power of the city authorities. But we see nothing in the resolutions from which any inference or legal presumption can arise that any interference with, or control over the building was contemplated. The resolution directed the architects " to make thorough examination of the foundations of said building, and report to the City Council in writing whether, in their opinion, the said building could be safely completed on said foundations." This was the entire extent of the action proposed by the council. The duties of the commission were limited by the terms of their appointment, to an examination of the foundations of the building, and to report to the council their opinion as to their safety; the council being left to take such further action as it might lawfully take, and as should be deemed by it just and proper. Had the architects reported that the foundations were unsafe, and the walls of the building were likely to fall in consequence thereof, it by no means follows that the city intended to interfere with the building itself.

We think there were various precautionary measures to which the city authorities, acting strictly within their corporate powers, might have resorted, as a means of averting or lessening the consequences that might have resulted to the persons or property of the citizens in case the walls should fall.

Without stopping to define the term " corporate purpose," or to refer to the numerous provisions of the act concerning cities and villages under which the city of Chicago is incorpo-

rated, it is sufficient to say that the city authorities are clothed with ample power to use all reasonable and proper means to protect the persons and property of its citizens; and to this end the city is authorized to levy taxes for the support of its police, its board of public works, its fire departments, board of health, and all its other instrumentalities which are necessary to the due administration of its municipal affairs. In a large city like Chicago, the objects and purposes requiring the exercise of its corporate authority are as diversified and numerous as the constantly changing condition and necessities of the people. It would not be doubted that the city has power to adopt all proper measures to prevent the approach into the city of pestilential diseases, and if necessary to close up streets or prohibit travel thereon temporarily, to prevent the spread of a contagious disease, and in general to do all other proper acts requisite and necessary for self-protection and the public welfare. The law invests the corporate authorities of a city with a large measure of discretion in this class of cases. Judge Dillon (see Dillon on Corporations, 2d Ed., Secs. 58–9) says: "Where the law confers upon the City Council or local legislature power to determine upon the expediency or necessity of measures relating to the local government, their judgment upon matters thus committed to them, while acting within the scope of their authority, cannot be controlled by the courts. In such cases the decision of the proper corporate officers is final and conclusive."

And Mr. Justice Thornton, in Chicago, Danville & Vin. R. R. Co. et al. v. Smith, 62 Ill. 268, says: "In the enactment of laws the legislature must exercise its judgment and discretion. As to questions of pure policy and expediency, no express or necessarily implied constitutional provision intervening, it is the sole judge. It has also the undoubted right to take a comprehensive view in determining the necessity of a law, and the character of the purpose to be accomplished by it. And if there be a grave doubt as to the nature of the purpose, the doubt must always be solved in favor of the action of the legislature."

If the City Council deemed it wise to first ascertain whether

the foundations of the government building were sufficient to support the heavy superstructure to be placed thereon, before taking any further action in relation thereto, the court cannot call in question the wisdom or expediency of their action. Had the council become satisfied that the walls of the building when constructed would be unsafe and dangerous, it might petition the Federal authorities to make needful alteration in the foundations; it might, acting strictly within the exercise of its police powers, close up the streets surrounding the block on which the building stands; it might cause public proclamation to be made and placards to be posted up warning the people of the danger; or resort to any other precautionary measure of a like character. Suppose after the building was erected there should be reason to suspect that large quantities of dynamite or other explosive materials were stored therein, or that the United States had deposited there army blankets that had been used in yellow fever hospitals, would it be claimed that it was not within a corporate purpose for the city authorities to send a committee to ascertain the truth or falsity of the suspicion, as preliminary to the use of such safeguards against danger as might be deemed best?

These and similar illustrations, that will readily suggest themselves to the mind, are sufficient to show that the services of the architects appointed pursuant to the resolution of the City Council may have subserved a useful purpose, and that whether they did or not, it was within the discretion of the council, under its corporate powers, to authorize their appointment. The services were rendered in accordance with the directions of the council, and we think the declaration shows a legal cause of action.

The ruling of the court in sustaining the demurrer to the declaration was erroneous, and the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.