J. B. REMINGTON, *Appellant*, v. J. T. WALTHALL *et al.,* *Appellees.*

No. 16,265.

### SYLLABUS BY THE COURT.

1. CITIES AND CITY OFFICERS—*Shade Trees Growing in Streets— Nuisance—Abuse of Discretion.* In the exercise of their delegated powers to grade and improve streets municipal authorities are vested with discretion to determine whether growing trees are nuisances and what obstructions shall be removed, and when their decision is made every reasonable intendment of good faith should be indulged, but an arbitrary decision by an officer, not made in good faith, that shade trees of an abutting owner are a nuisance, when in fact they are not and where there is no reason or public necessity for cutting them down, is no protection or defense to the officer who cuts them down when an action is brought against him to recover for the injury and loss.

2. ——— *Resolution or Ordinance.* It is competent for the city council to pass a resolution directing the officers in charge of the grading of a street not to cut down certain shade trees until such action shall have been authorized by the council.

Appeal from Miami district court; WINFIELD H. SHELDON, judge. Opinion filed April 9, 1910. Reversed.

*Frank M. Sheridan,* for the appellant.

*E. J. Sheldon,* and *S. J. Shively,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought by J. B.

Remington against the city of Osawatomie, J. T. Walthall, as mayor, and W. H. Hickman, as street commissioner of the city, and also against Walthall and Hickman as individuals. The city as well as the mayor and street commissioner went out of the case upon a ruling sustaining a demurrer as to them, and the case thereafter proceeded against Walthall and Hickman alone. Remington alleged, and the proof tended to show, that he owned a home in Osawatomie which fronted on Main street, and on this street he had built a sidewalk and had planted fourteen shade trees, which had been growing there for over twenty years. The city authorities had notified Remington that he must build a new sidewalk on a lower grade, and Remington had learned of an intention by the mayor and street commissioner to cut down his shade trees growing in the street in front of his home. He appeared before the council and protested against the cutting of the shade trees, and that body passed a resolution to the effect that thereafter no shade trees should be cut until the same should be specifically authorized by the city council. Testimony was offered that in defiance of this order, and without submitting the question to the council, Walthall, the mayor, and Hickman, the street commissioner, acting together, cut down the shade trees, lifted the sidewalk and tumbled it over upon the lawn while Remington was absent from the city, and proceeded with the grading of the street. In their answer they alleged that the work was done in pursuance of an ordinance, but no copy of such an ordinance was pleaded and none was produced in evidence. It was also averred that the cutting of the trees was necessary in order to bring the street in front of Remington's property to grade, but Remington met these averments of the answer with general denials. In addition to the evidence mentioned, Remington produced testimony that there was a city ordinance regulating the parking of streets and the planting and protecting of shade trees, which provided

for the punishment of those who injured or destroyed such trees. There was testimony that Walthall, the mayor, resented the action of Remington in appearing before the council and obtaining the order to stop the cutting of shade trees, and then remarked that Remington "thought that he had his auger in me but I have my auger in him and I will keep it there." One of the excuses he made for cutting the trees was that he had a street force organized and employed and that he did not have any other work for them to do. There was testimony to the effect that when Remington asked the mayor to defer action until a dispute as to a survey of the street could be settled, stating to him that if the old survey was adopted he would put in a new sidewalk at once, Walthall responded in an angry and offensive manner "that if I [Remington] undertook to do a bit of work up there except right where he told me that he would have me arrested." The trees were cut, it appears, after the resolution was passed by the council and without the concurrence of that body. No testimony in behalf of Walthall or Hickman was offered, as the court sustained their demurrer to Remington's evidence and gave judgment against him.

An abutting lot owner has an interest and ownership in the shade trees planted and growing in the parking in front of his lots. An assessment may even be made against his lots to pay for the charge of planting and maintaining shade trees in the street in front of his premises. (*Heller v. City of Garden City,* 58 Kan. 263.) An owner holds his right to the trees planted to adorn and improve his lots subject to the paramount right of the public to the use of the streets, but it is an ownership which gives him a standing in court to prevent an unauthorized and unjustified destruction of the trees by officers or others. (*Paola v. Wentz,* 79 Kan. 148.) The city authorities are, of course, not to be hampered in the improvement or control of the streets, and when they decide that a tree or other obstruction is a nuisance

and that the public good requires that it should be abated or removed every reasonable intendment of good faith and honesty of the officers will be indulged. But a tree, however, does not become a nuisance merely because a city officer has declared it to be such. A decision arbitrarily made that a tree maintained by an abutting owner is a nuisance and should be cut down, when in fact it is not an obstruction and there is no reason or public necessity for removing it, is no defense for the official or individual who arbitrarily and unnecessarily destroys it. In *Frostburg v. Wineland,* 98 Md. 239, it was decided that shade trees growing on a street are not a nuisance *per se* and only become so when they interfere with the use of the street, and it was there said:

"It is clear, we think, both upon reason and authority, that when a municipality undertakes to destroy private property which is not a nuisance *per se,* it then transcends its powers and its acts are reviewable by a court of equity." (Page 244.)

In this case there was no proof of an ordinance authorizing the mayor or street commissioner to change the grade of the street or to cut down the trees and remove obstructions from streets, and so far as the abstract shows their action in this respect was without authority. If they had reached the defense and offered testimony they possibly might have produced an ordinance giving them general authority to grade and improve streets. If it be assumed that such authority existed, it is one which must be exercised in good faith by the officers. Indeed, there is testimony that the officers were actuated by malice in the action taken, and if they were vested with any discretion to decide upon the removal of the trees such discretion was in fact abused. In such a case the owner is entitled to recover damages from the one who destroys his property. In this instance the trees appear to have been destroyed against the will of the city council and in spite of its order.

It is claimed, however, that the order of the council was without force because it was in the form of a resolution instead of an ordinance. It is true, as appellees contend, that the statute provides that the powers of the council to open and improve streets and the like is to be exercised through ordinances adopted in a certain manner, which is prescribed. A statutory direction that certain steps shall be taken by ordinances leaves no discretion in the council as to methods, and in a general way it may be said that every step that is legislative in character must be accomplished by an ordinance. There are many things, however, of a ministerial and administrative character that may be accomplished by a resolution. In McQuillin on Municipal Ordinances, section 2, it is said:

"Whether the particular thing should be done by ordinance or resolution depends upon the proper construction of the charter and the forms observed in doing the act. An ordinance prescribes a permanent rule of conduct or government, while a resolution is of a temporary character only. It may be stated as a general rule that matters upon which the municipal corporation desires to legislate must be put in the form of an ordinance, while all acts that are done in its ministerial capacity and for a temporary purpose may be put in the form of resolutions."

It would seem that a ministerial act or a mere detail in the execution of a power or provision for some temporary matter, applicable alone to a single and individual case, might be accomplished by means of a resolution. So it has been decided that a resolution for the purchase of apparatus for a fire department would bind the municipality. (*Green v. City of Cape May,* 41 N. J. Law, 45.) A resolution has been held to be sufficient to fix the amount of a license fee previously authorized. (*The City of Burlington v. The Putnam Insurance Company,* 31 Iowa, 102; *Arkadelphia Lumber Co. v. Arkadelphia,* 56 Ark. 370.) It has been held to be sufficient to direct municipal agents to make proper

contracts, as well as to appoint municipal agents. (*City of Alton v. Mulledy et al.*, 21 Ill. 76; *Egan v. City of Chicago*, 5 Ill. App. 70.) It has been treated as a proper method of directing a conveyance of certain property (*Morgan v. Johnson*, 106 Fed. 452), and, also, for waiving the time of performance of a contract. (*Hubbard et al. v. Norton et al.*, 28 Ohio St. 116. See, also, 1 Beach Pub. Corp. § 485; 1 Dillon Munic. Corp., 4th ed., § 307.) These cases illustrate the trend of authorities, but of course they depend to quite an extent upon the charter acts under which the municipalities were acting. Some of them may be inconsistent with our general laws providing for the government of cities. In case of an ordinance providing for the planting of trees in a park, for instance, without specifying how many or what kinds of trees or shrubs should be planted, it would seem that a resolution might be adopted prescribing how many of each kind of trees should be planted in that park. It would appear, too, that there is no impropriety in providing by resolution that the officers in charge of grading streets should consult the council or a committee of the council as to whether it was necessary that particular shade trees should be cut down. It is not uncommon for administrative officers to confer with a committee of the council having the special matter in charge, and so far as anything is shown in the record the action of the council in passing the resolution was a just and proper exercise of its powers. The fact that the officers ignored the resolution tends at least to establish the charge that they acted arbitrarily and oppressively in destroying the shade trees in question.

The judgment is reversed and the case remanded for further proceedings.