[Civ. No. 4070. Third Appellate District.—June 19, 1930.]

JAMES NEIL et al., Respondents, v. CITY OF GLENDALE (a Municipal Corporation) et al., Appellants.

554

Benard C. Brennan, Ray L. Morrow, Frank M. Moody and W. Turney Fox for Appellants.

Bert P. Woodward and Frank H. Snyder for Respondents.

TUTTLE, J., *pro tem.*—This is an action brought to enjoin appellant City of Glendale, from proceeding with the improvement of an avenue within said city, under the Improvement Act of 1911. The trial court granted a permanent injunction and this appeal is prosecuted from the judgment.

Lomita Avenue, at the time this action was brought, was improved (by the city) with a concrete roadway thirty feet in width. This improved strip lay equally on each side of the center line of a sixty-foot strip of land, with lots abutting upon said sixty-foot strip. The traveled roadway is thirty feet in width, and on each side thereof is a row of large eucalyptus trees, which occupy a ten-foot space between the roadway and the sidewalk. The sidewalks are five feet in width.

Under the proposed improvement, a strip forty feet wide, lying equally on each side of the center line of said sixty-foot strip, will be paved with concrete. It is conceded that such improvement will necessitate the destruction of the trees. Plaintiffs are the owners of a lot abutting upon said sixty-foot strip of land, and their contention is that the strip of real property, upon which these trees are situated, is not a part of the street, and hence the city had no jurisdiction to improve the same under the Improvement Act of 1911 (Stats. 1911, p. 730). Using the language of plaintiffs and respondents "the plaintiffs, as owners of abutting property, claim an easement" in and to the use of said trees for ornamentation and shade, and they "claim the legal right to protect themselves in the enjoyment of the same, without interference." The findings of the court are in accord with this contention. The following finding of the trial court is assailed as unsupported by the evidence:

"That prior to March 19, 1895, said Lomita avenue was opened to public use and travel by common law dedication. That by said dedication the roadway for travel upon said avenue was limited to a width of 30 feet; that is to say, a width of 15 feet on either side of the center line of said avenue. That the said parkways, together with the rows of eucalyptus trees then standing thereon,

were dedicated to the specific public uses of ornamentation and shade, and were restricted to such uses by the acts, conduct, and declarations of the then owners of the fee in said avenue, in which restricted use the plaintiffs, as abutters upon said block, have an easement to the user of said parkways and trees for said purposes of ornamentation and shade, as intended by said dedicators.

"That the intent of said dedicators was later expressed in writing by Oliver S. Bond, and Clara A. Bond, then owners of the fee in said avenue subject to the uses thereof theretofore dedicated to the public, in an agreement with Henry C. Goodell, and A. J. Hechtman, as follows:

" 'The parties of the second part hereby agree and promise not to destroy or remove any of the ornamental trees or shade trees along Lomita avenue upon the land hereby agreed to be conveyed; and said second parties also agree that in case any trees on said land shall die during the existence of this agreement, said second parties agree to replace said trees with other trees.' "

It appears that the tract of land upon which these trees are situated was a ranch prior to and for some time after the year 1895, and was owned by one Crow. Only one witness, Rowan, was called by plaintiff to prove the dedication relied upon in said finding, and his testimony was as follows:

"Q. What did you observe in those times, if anything, as to the use made at that time of the space between those gum trees? A. That was Mr. Crow's driveway. He used to drive back and forth to his residence. I could not state where his residence was, except to look down the driveway where his residence was. Q. At that time was there a highway there along the course that is now the course of Central avenue? A. That I could not state because our travels were mostly down what I think they call Glendale boulevard now. Let me see, I think that is the way, yes, where Glendale boulevard is. My travels were mostly down that way. I could not make a statement to the court that there was a roadway in the vicinity of Central avenue, that I could not say. Q. Was that driveway at that time an open one or was it closed, if you remember? A. You mean Lomita drive? Q. Yes. A. Why, it was

open. When you wanted to go and see Mr. Crow, why you drove in there. That was Mr. Crow's passageway.''

On March 19, 1895, Oliver S. Bond and Clara A. Bond, the owners of the ranch, executed an agreement for the sale of the same with Goodell and Hechtman. There was a clause in this agreement as follows:

''The parties of the second part hereby agree and promise not to destroy or remove any of the ornamental trees or shade trees along Lomita avenue upon the land hereby agreed to be conveyed; and said second parties also agree that in case any trees on said land should die during the existence of this agreement, said second parties agree to replace said trees with other trees.''

The rules of law concerning the fundamental requirements of a common-law dedication of private property to public use are well established.

1. There must be an intent to dedicate (commonly referred to as the *animus dedicandi*) by a person legally entitled to make a dedication.

2. There must be an acceptance of the property on behalf of the public.

(a) This acceptance may be shown by some formal act of acceptance made by a competent legislative body; or,

(b) by user on the part of the public in such a manner and for such a length of time as clearly to indicate the intention of the public to accept the offer on the terms and conditions upon which it was made.

These principles are clearly stated and exhaustively discussed in the following leading authorities: 4 McQuillin on Municipal Corporations, 2d ed., secs. 1686–1707, incl.; 9 Cal. Jur., pp. 15–59, incl.; 1 Elliott on Roads and Streets, 4th ed., secs. 138 and 165–171.

The court, in *Harding* v. *Jasper,* 14 Cal. 642, 647, said: ''The general question now arises what constitutes a dedication of land for the purpose of a rural highway? We qualify the proposition by the latter words, because it is held by authority and upon reason that it requires stronger proof of dedication in the cases of roads in the country than that of streets or lanes in a town or city. . . . An intention to dedicate must be obvious, and the same acts which would warrant the inference in cities and towns, would be quite insufficient in sparsely settled agricultural

districts." (See, also, *Quinn* v. *Anderson,* 70 Cal. 454 [11 Pac. 746].)

The testimony of witness Rowan and the said contract is all the evidence in the record bearing upon the finding ' and urged by respondent in support thereof.

We are of the opinion that such evidence, under the rules stated, is insufficient to support the finding in question. There is no evidence of a user upon the part of the public, such as would justify a finding of a dedication. On the contrary, the evidence referred to indicates that the road was a private one, and used in connection with the ranch-house of the owner. Says the witness: "That was Mr. Crow's driveway. He used to drive back and forth to his residence."

The clause in the agreement of sale certainly cannot amount to a dedication of the trees to a specific public use. It was simply a private agreement between the parties. The public was not concerned in any manner. The agreement was to be in force for ten years from the date thereof. There is no evidence that the deed, given pursuant to said agreement contained any reference to the trees. We do not believe it can be argued that because the Bonds required Goodell and Hechtman to promise not to destroy any of the trees along this roadway, they (the Bonds) manifested a previously existing intent to dedicate the road to the public, and reserve the trees for ornamentation during all future time. If an easement in respect to said trees was created at any time in favor of subsequent purchasers of portions of said ranch, why was there no mention of that fact in any of the deeds? Plaintiffs are successors in interest of Goodell and Hechtman, but nowhere in any of the mesne conveyances, do we find any reference to these trees. If it is conceded that the thirty-foot roadway was a public road prior to 1895, there is absolutely no evidence to uphold a finding that the trees were dedicated to a "specific public use" and that by reason thereof plaintiffs, as abutting owners, have an easement therein.

Between 1895 and January 30, 1905, the road continued to be used by the owners of homes upon the tract. There is no testimony, directed to a time between said dates, which will support a finding that the trees were dedicated to a "specific public use," nor were any facts proved

which would give subsequent owners of portions of the tract any easement in maintaining the trees adjacent to the road. As witness Shattuck testified, orange trees grew very close to these eucalyptus trees. The center of the road, he says, was used as a sidewalk.

On the twenty-ninth day of November, 1904, Goodell conveyed his interest in said real property to State Bank and Trust Company.

On January 30, 1905, State Bank and Trust Company filed with the county recorder of Los Angeles County a map, purporting to be a "Map of Grider and Hamilton's Lomita Park," showing a subdivision of the property hereinbefore mentioned into lots with frontages varying from 100 to 80 feet upon the various streets and also along Lomita Avenue. The latter was shown on this map as being of a uniform width of sixty feet. At the time this map was filed the bank was the attorney-in-fact for the record owners of said tract, acting under a power of attorney which read as follows:

"Know All Men by these Presents that we Oliver S. Bond and Clara A. Bond his wife both of the City of Toledo County of Lucas State of Ohio do hereby nominate constitute and appoint State Bank and Trust Company of Los Angeles a corporation having its principal place of business in the City of Los Angeles County of Los Angeles, State of California our true and lawful attorney in fact, with power and authority as follows to wit:

"In our name and as our act to execute and deliver deeds of grant bargain and sale conveying any of the lots shown on that certain map to be recorded in the office of the County Recorder of Los Angeles County and entitled A Map of Grider & Hamilton's Lomita Park. Said real property is situated near Glendale in the County of Los Angeles California and is the same property referred to in two certain agreements respectively recorded in Book 1030 of Deeds page 278 and in Book 1063 of Deeds, at page 116 in the office of the County Recorder of Los Angeles County California.

"We also hereby grant to and confer upon our said attorney in fact power and authority to receive as our agent and give receipts for the purchase price of any real

property sold by said attorney in fact in pursuance of the authority hereby created.

"And all the acts of our said attorney in fact done in pursuance of the authority hereby created we will well and truly ratify and confirm with the same effect as if done by us in person.

"In Witness Whereof we have hereunto set our hand and seals this 7th day of January, 1905.

"OLIVER S. BOND. (Seal)
"CLARA A. BOND. (Seal)"

Upon the map was indorsed the following clause, signed by the bank in its own behalf, and also as attorney-in-fact for Oliver S. Bond and Clara A. Bond:

"The undersigned hereby acknowledge and declare that they are the owners of the foregoing tract of land enclosed within the red colored border lines; that said tract has been subdivided at our request, and this map clearly shows the subdivision of said tract within lots, blocks, avenues and streets and we hereby dedicate for public use all of said alleys and streets shown on the foregoing map and enclosed within the red colored border lines."

Upon the same day that the map was filed it was accepted by the board of supervisors, the following order of acceptance being indorsed upon the face of the map:

"In re: Acceptance of streets, alleys, etc., in Lomita Park . . . it is ordered that all streets, lanes, alleys, roads and other portions of land shown upon said map (surveyed December, 1904) and therein offered for dedication be and the same are hereby accepted as public highways."

Several months after this map was filed the predecessor in interest of plaintiffs purchased a lot under the following description, said lot abutting upon Lomita Avenue: "Lot number ninety of 'Grider and Hamilton's Lomita Park' as per map recorded in Book 6, page 105 of Maps, in the office of the Recorder of Los Angeles County."

The deed to said lot was executed by the bank in its own behalf and also as attorney-in-fact for the Bonds.

The court found that the said power of attorney contained no grant of authority to dedicate, and this finding is attacked by appellant. There is also a finding "that the dedicatory clause endorsed upon the map omits to dedicate any avenue delineated upon said map."

We are of the opinion that the proceedings with reference to said map constitute a valid dedication of Lomita Avenue as a public street. ■ When the map was filed for record the bank was the equitable owner of the property, and the attorney-in-fact for the legal owners. The power of attorney gives authority to the bank to execute and deliver deeds conveying "any of the lots shown on that certain map to be recorded—entitled a Map of Grider and Hamilton's Lomita Park." ■ The authority with which an agent is invested is not necessarily confined to the performance of those acts alone which are authorized by the bare words in which an authority is conveyed. On the contrary, it is rarely so confined. (*Goldtree* v. *Swinford,* 74 Cal. 586 [16 Pac. 493].) Considering all the facts and circumstances surrounding the transaction, we are of the opinion that there was a legal dedication of Lomita Avenue to public use, as said avenue is delineated upon the map.

■ It is contended by respondents that as the offer of dedication indorsed upon the map refers only to alleys and streets, it does not apply to Lomita Avenue. The latter is one of the main thoroughfares appearing in the proposed subdivision, and it is obvious that the word "streets" was intended to include Lomita Avenue. The contention is without merit.

As there was no evidence upon which the court could base its finding that the predecessors of plaintiffs, prior to the filing of the map, had any easement in the use and preservation of a parkway bordering upon said avenue, and as there was a legal dedication of a sixty-foot avenue, which included the so-called parkway, the findings upon such issues cannot stand.

Plaintiffs are hardly in a position to appeal to the equity side of the court. For many years prior to the time that they purchased their lot this map was a public record. The sixty-foot strip which constitutes this avenue was laid out upon the ground, and the lot which plaintiffs purchased was described in their deed by reference to this map. These trees were out in this avenue, some twelve feet from their property line. It is true that some representations were made to plaintiffs when they purchased their lot, to the effect that the trees could not be destroyed by the city, but such representations could not be set up for

the purpose of limiting or abrogating a statutory dedication, nor could they have impressed plaintiffs seriously, in view of the fact that the map by which they purchased showed a dedication of the entire avenue, without any restrictions whatever.

The right of a municipality to remove shade trees in public streets, when necessary for the improvement of said streets, and without liability to an abutting owner, is not open to question. (*Vanderhurst* v. *Tholcke*, 113 Cal. 147 [35 A. L. R. 267, 45 Pac. 266]; 44 C. J. 923.) The evidence in this case shows, without contradiction, that the parkway (upon which the trees were planted) was part of a public street at the time this action was commenced, and the attempt of plaintiffs to show any special interest or easement in the maintenance of said parkway, or the trees thereon, has utterly failed.

The appeal of respondents that the destruction of these trees should be deplored and prevented because they are "useful as well as aesthetic contributions to the comfort of habitation" is one that might seriously engage the legislative branch of the city government. On the other hand, the demands of rapidly growing traffic may make the removal of the trees a paramount necessity. In any event, it is purely a matter of legislative concern.

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 18, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1930.