No. 31,449 and No. 31,546

PAUL H. DITZEN and GEORGIA DITZEN, *Appellees*, v. CITY OF KANSAS CITY, *Appellant*.

(28 P. 2d 739.)

Opinion filed January 27, 1934.

*Alton H. Skinner, John C. O'Brien, James K. Cubbison, William H. Towers* and *George H. West*, all of Kansas City, for the appellant.

*James M. Meek* and *Paul H. Ditzen*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: The plaintiffs, Paul H. Ditzen and Georgia Ditzen, are the owners of lots with a large frontage on Armstrong avenue, in Kansas City, which, as dedicated, was eighty feet wide. Between the curb of the pavement on that street and the sidewalk at the property line is a park on the side of the street where a number of large shade trees had been planted and cultivated by the owners of the property. The street had been originally paved with brick to a width of thirty feet, which had become defective, and the city determined upon a plan to improve that street by placing over the old pavement an asphalt covering, and also to widen the street by cutting five feet into the park on each side of the street. In carrying out this plan of widening, the city cut into the park in front of plaintiffs' property and destroyed several shade trees, which were found to be of the value of $390. After the plaintiffs and others had claimed compensation for destruction of the trees, and plaintiffs had filed a statement against the city, the plaintiffs and the city agreed to have the damages for the destruction fixed by three appraisers. Under the agreement three appraisers were selected and they appraised the plaintiffs' damages for the loss at $390, but the city failed and refused to pay for the same.

The city admits that three appraisers were named who were competent to appraise the value of growing trees and had found the value of the trees to be as stated, but it denies that it is under any legal liability to pay for the same, and also that the plaintiffs had joined in a petition to the city to have the street improved.

When the matter came up for trial in the district court and the opening statements made, the court determined that there was only a question of law involved, and on motion for judgment on the pleadings, judgment was rendered for the $390, which, with the interest thereon, amounted to $438.75. An appeal was taken from that judgment, but no transcript was obtained or abstract made at once, and the appeal slept for some time in the supreme court. Although an appeal had been taken by the city, the judgment was treated as a finality by plaintiffs and it was filed with the city commission and the city disallowed the claim. They ask that the judgment be either paid or that bonds be issued in payment of the same under House bill No. 745, passed by the legislature in 1933. The court held that the judgment had become a finality, binding upon the city either to pay the judgment or issue bonds in pursuance of the new law.

An appeal by the city from that ruling on the merits is the same under both cases, and is confined largely to the last case, No. 31,546. Both raise the question as to the liability of the city for shade trees that have been injured or destroyed at the instance of the city, one side contending that the trees are the property of the adjoining owner and that the city is liable for the loss, the other insisting that it is a part of the highway and that it was within the power of the city to widen the street and anything done in pursuance of that power cannot create a liability against the city.

The appeal in the first case was taken when the city filed its notice with the clerk of the trial court of its purpose to appeal from the judgment rendered in that court. The fact that the clerk of that court failed to transmit the same to the supreme court did not operate to nullify the appeal. Plaintiffs really had notice of the appeal and could have taken steps to prepare the case for submission or to have it dismissed. (*Thisler v. Little,* 86 Kan. 787, 121 Pac. 1123.) No such steps were taken for some time, and the case was still pending on appeal when the cash-basis law was enacted. The city, as we have seen, treated the former judgment as a finality, and the court made an order requiring the city to pay the same or to issue bonds

and from the proceeds of the same pay the judgment. An appeal was taken by the city from that judgment and the two appeals are here and were consolidated and heard together.

The question is: Does the city, which determines to widen its pavement five feet on each side, and in doing so finds it necessary to remove shade trees in which the plaintiffs have an interest, become liable to the lot owner for the value of the trees removed by it? The full width of the street as originally dedicated was eighty feet. It was dedicated for highway purposes, and, although the title to streets is placed elsewhere, the control of the streets is vested in the governing body of the city. Because of an increase of traffic and of a petition presented by the citizens of the community, the street was widened to the extent of ten feet, five feet on each side of the present pavement. In widening the pavement it became necessary to remove the trees in question. There is no claim that the city commission acted wantonly in removing the trees. No claim that the improvement could be made without their removal, and it appears that even the plaintiffs petitioned for the improvement that was made. It is not contended that the improvement could have been made without the removal of the trees, but the only claim is that the city should pay for property of which it had full control when used for highway purposes.

The interest which a lot owner has in trees growing in front of his lots, which he may have planted, cultivated and cared for many years, is recognized. (*Heller v. City of Garden City*, 58 Kan. 263, 48 Pac. 841; *Remington v. Walthall*, 82 Kan. 234, 108 Pac. 112.) It is also provided that he may recover against parties who injure or destroy such trees, but they are to be under the reasonable supervision of the city, which has the superior right when it comes to using the streets for public purposes. (R. S. 12-1611.) For instance, there is the case of *City of Paola v. Wentz*, 79 Kan. 148, 98 Pac. 775, where it was alleged that the city authorities persisted in cutting down trees without reason and in the exercise of its absolute power to conclude to remove trees without having to give reason for doing so. This, it was held, would be carrying the principle of plenary control of public grounds and power too far, but in the decision it was remarked that:

"In either case the property owner has interests which cannot be disregarded, but which must yield if found to conflict with the interests of the community." (p. 151.)

And further along in the opinion it was said that his interest is—

"Subject only to the superior claims of the public, as determined perhaps by the city authorities, but this determination must be the result of a fair and reasonable consideration—it may not be arbitrary or capricious." (p. 153.)

See, also, *Remington v. Walthall,* supra.

Here there was no question as to the right of the city to remove the trees in order that the improvement might be made, an improvement for which the ground had been dedicated and which plaintiff had asked to have made. One who plants and cultivates trees on the street where it may be found necessary to widen and improve the street knows of the superior right of the city to widen the street as the traffic increases, and is not in a position to complain if the city uses that which has been dedicated for its use when it becomes necessary without paying for it. It is seen that the city had the superior right, for the interest of the lot owner must yield where it conflicts with that of the community, and further, that it must yield as far as the rights of the public are concerned. In 5 McQuillin on Municipal Corporations (2d ed., § 2149), in treating of the subject of shade trees, it is said:

"The owner may recover damages for the unnecessary injury or destruction of shade trees along the sidewalk caused by a change of street grade or the construction of a sewer. But where the trees are within the lines of the street or sidewalk on which grading is done, the municipality is not liable to abutting owner, should their destruction become necessary in the proper execution of the work."

In *Kemp v. City of Des Moines,* 125 Ia. 640, 644, the subject was before the court, and after a statement that the lot owner has a property interest in the shade trees standing in the street in front of his lot, and if they are so located as not to be an obstruction to the proper use of the roadway or sidewalk, the city may not arbitrarily destroy or remove them, it was said:

"If, however, the city duly adopts a plan for the improvement of the street by grading or otherwise, and the execution of such plan necessarily requires the destruction of the trees, their removal in the prosecution of such work affords no cause of action to the lot owner." (p. 644.)

In *Neil v. City of Glendale,* 106 Cal. App. 553, 562, the same doctrine was announced:

"The right of a municipality to remove shade trees in public streets, when necessary for the improvement of said streets, and without liability to an abutting owner, is not open to question." (Citing *Vanderhurst v. Tholcke,* 113 Cal. 147; 35 A. L. R. 267; 44 C. J. 923.)

The same doctrine is announced in *Scott v. Marshall,* 110 Mo. App. 178; *Colston v. St. Joseph,* 106 Mo. App. 714; *Chase and another, v. The City of Oshkosh,* 81 Wis. 313; *Wilson v. Simmons,* 89 Me. 242; *Frostburg v. Wineland,* 98 Md. 239; *Landry v. City of Lake Charles,* 125 La. 210.

The authorities, of which only a few have been cited, are well-nigh unanimous on the question that a city is not liable to a lot owner for shade trees cut down by the city in a street where it is necessary to an improvement and where it is stripped of any question as to the necessity of their removal. Plaintiffs were not entitled to judgment against Kansas City in the first appeal, and, of course, were not entitled to judgment in the second appeal. Both judgments are reversed, and the cases remanded with directions to enter judgment in each case for Kansas City.

HUTCHISON, J., not sitting.