No. 44,368

BEULAH E. GRANTHAM, *Appellant*, v. THE CITY OF TOPEKA, KANSAS, *Appellee*, GLENDA HUNTSMAN, a Minor, and GEORGE STANLEY.

(411 P. 2d 634)

394

Opinion filed March 5, 1966.

*Edwin D. Smith*, of Topeka, argued the cause, and *David H. Fisher, Donald Patterson, C. K. Sayler*, and *Jack L. Summers*, of Topeka, were with him on the brief for appellant.

*Donald S. Simons*, Assistant City Attorney, of Topeka, argued the cause, and *John W. Lewis*, City Attorney, *Gary A. Savaiano, William B. McCormick* and *William L. Harris, Jr.*, of Topeka, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The point at issue in this appeal is whether a knocked down or bent over stationary stop and one-way street sign, installed by the city in the street at the intersection of two designated one-way through streets, constitutes a street defect under Kansas law. For reasons hereafter stated, we hold that it does.

The plaintiff, Beulah E. Grantham, commenced this action against the city of Topeka and Glenda Huntsman and George Stanley, the driver and the owner, respectively, of the automobile which collided with the plaintiff's automobile as hereafter stated. The city filed a separate answer which denied all liability for plaintiff's injuries and damages, and subsequently filed a motion for summary judgment contending as a matter of law, it was immune from tort liability. The motion was heard upon the facts admitted by the pleadings and the city's answers to interrogatories served by the plaintiff pursuant to K. S. A. 60-233. The district court sustained the motion upon the ground that the maintenance of stop and one-way street signs is a part of the regulation of traffic falling within the police power of the city and is, therefore, a governmental function for which the city cannot be called to account.

There is no dispute as to the facts, and they are briefly summarized: On December 12, 1962, the plaintiff was driving north on

Tyler Street when her automobile collided with an automobile driven by Glenda Huntsman, traveling east on Huntoon Street. The collision occurred at approximately 11:45 a. m. in the northeast quadrant of the Tyler-Huntoon intersection. Tyler is a one-way through street northbound and Huntoon is a one-way through street eastbound. Both streets are so designated by ordinances of the city of Topeka, and are protected from cross-street traffic by stop signs for several blocks either side of the intersection. Prior to the time of plaintiff's accident, the city had placed in Tyler Street a stationary stop sign which also had affixed to it a one-way street sign, requiring northbound Tyler Street traffic to stop before proceeding into the intersection and indicating that Huntoon was a one-way eastbound street. The plaintiff was unfamiliar with the intersection, having never traveled north on Tyler prior to the accident. When she entered Tyler Street from an intersecting east-west street several blocks south of the intersection, she was required to stop before proceeding north on Tyler.

On December 11, 1962, another accident occurred at the Tyler-Huntoon intersection at about 3:00 p. m. in which the stop and one-way street sign was knocked down or bent over so that it could not be seen by a driver of a northbound automobile on Tyler.

The Topeka police department investigated the accident of December 11, 1962, and the admissions of the city established that it had notice of the defective stop and one-way street sign from 3:11 p. m. on that date, to 11:45 a. m. on December 12. No other sign was placed at the intersection for more than twenty hours prior to plaintiff's accident, during which period of time the stop and one-way street sign was not in place. Between 1:00 p. m. and 3:00 p. m. on December 12, 1962, following the plaintiff's accident two members of the traffic engineering department removed the damaged sign and installed a new stop and one-way sign at the intersection.

Section 26-801 of the Code of the City of Topeka, 1963, and stipulated by the parties as being in effect on December 12, 1962, reads:

"(a) The streets and parts of streets described in the schedule appearing as Section 2 of this ordinance ([26-802] designating Tyler and Huntoon and other streets as one-way streets), are hereby declared to be through streets, except at those intersections where the traffic on the through street is controlled by traffic signals or stop signs. It shall be the duty of the City Commission to designate on which of two through streets a stop sign or signs shall be placed and maintained.

"(b) Whenever any through street shall have been designated by ordinance, it shall be the duty of the Traffic Engineer to place and maintain a stop sign on each and every street intersecting such through street or intersecting that portion thereof described and designated as such by any ordinance, unless traffic at any such intersection is controlled at all times by traffic-control signals."

Section 26-701 reads:

"(a) Whenever any street in the city shall have been designated as a one-way street or alley, by resolution of the City Commission, the Chief of Police shall place and maintain signs giving notice thereof. No regulation of traffic shall be effective unless and until such signs are in place. Signs indicating the direction of lawful traffic movement shall be placed at every intersection where movement of traffic in the opposite direction is prohibited."

The plaintiff's suit was not brought upon the theory that the city failed to properly regulate traffic, or that it failed to exercise its discretionary right to establish traffic-control regulations at dangerous intersections, or to erect or not erect, or to remove, stop signs by ordinances duly enacted. The action was based upon negligence on the part of the city of Topeka for breach of its legal duty to keep its streets in a condition reasonably safe for their intended use. The plaintiff claims that the failure of the city to maintain the stop and one-way street sign, after having notice that it was knocked down or bent over, constituted a street defect against which the defense of governmental immunity does not apply. She further claims that the failure of the city to replace within a reasonable time or warn concerning the sign was negligence on its part, and contends the district court erred in failing to hold that the issues of the negligence of the city in failing to replace or warn concerning the sign, notice of the defective street, and proximate cause, were questions of fact to be determined by a jury.

The plaintiff's first contention that the maintenance of stop and one-way street signs is not a part of the regulation of traffic and hence is not a governmental function, cannot be sustained. This court has consistently held that the legislature has plenary power over streets and highways, which may be exercised by the state, or delegated to local political subdivisions or municipalities in the manner prescribed. (*Heller v. A. T. & S. F. Rld. Co.*, 28 Kan. * 625; *State, ex rel., v. St. Louis-S. F. Rly. Co.*, 124 Kan. 433, 260 Pac. 980; *State, ex rel., v. State Commission of Revenue and Taxation*, 163 Kan. 240, 247, 181 P. 2d 532.) Means selected by the state or a municipality in the control and regulation of traffic under the police

power is a governmental function and includes such things as prescribing one-way through streets, establishing express thoroughfares, providing medial dividers, barriers, curbs, and other traffic-control devices, prohibiting left turns, prohibiting or regulating parking, and restricting the speed, weight, size and character of vehicles allowed on certain streets and highways. (*Riddle v. State Highway Commission*, 184 Kan. 603, 611, 339 P. 2d 301; *Moore v. State Highway Commission*, 191 Kan. 624, 383 P. 2d 549; *Jones v. Garrett*, 192 Kan. 109, 386 P. 2d 194; *Watson v. City of Topeka*, 194 Kan. 585, 589, 400 P. 2d 689; *Brock v. State Highway Commission*, 195 Kan. 361, 404 P. 2d 934.)

Likewise, we reject the city's contention that a municipality's liability with respect to a street defect cannot extend beyond that of a township, county or the state under K. S. A. 68-301 and 68-419. The city cites no statute, and we know of none, which imposes liability upon a municipality for injuries resulting from defects in a public street. In these and other areas, the liability of municipalities has been judicially established in a long and consistent line of decisions, commencing, it may be said, with the case of *City of Leavenworth v. Casey*, McCahon's Rep. 122, (1 Kan. * 124) decided by the Territorial Supreme Court, in which the city was held responsible for injuries resulting from the negligent construction of a sewer. (*Jansen v. City of Atchison*, 16 Kan. 358, 381.) Perhaps the first case this court considered was *City of Topeka v. Tuttle*, 5 Kan. 311, in which the petition alleged the city negligently left one of its streets out of repair, whereby the plaintiff suffered injury; and on an objection that the petition was insufficient, this court held that it was sufficient. A few of our many cases are hereafter noted. No sound reason exists to apply statutes relating specifically to the liability of a township, county, or the state for a defective highway or bridge in determining a municipality's liability for a defective street, since the legislature can speak with drastic clarity whenever it wishes to impose or limit the liability of municipalities for negligence in the performance of a governmental function.

It is a general rule of law in this state that a municipality is not liable for negligent acts of its officers or employees in the performance of a governmental function unless such liability is expressly imposed by law. (*Wray v. City of Independence*, 150 Kan. 258, 92 P. 2d 84; *Rhodes v. City of Kansas City*, 167 Kan. 719, 208 P. 2d 275; *Stolp v. City of Arkansas City*, 180 Kan. 197, 303 P. 2d 123;

*Rose v. Board of Education,* 184 Kan. 486, 337 P. 2d 652; *Parker v. City of Hutchinson,* 196 Kan. 148, 410 P. 2d 347.) The rule is based on the doctrine that the state is not liable except as made so by statute and that municipalities, when acting in a governmental capacity, are arms of the state. (*Perry v. City of Wichita,* 174 Kan. 264, 255 P. 2d 667; *Weast v. Budd,* 186 Kan. 249, 253, 349 P. 2d 912.) However, exceptions have been engrafted into this general rule by decisions of this court to the effect that a municipality is liable (1) where its conduct results in creating or maintaining a nuisance (*Jeakins v. City of El Dorado,* 143 Kan. 206, 53 P. 2d 798; *Steifer v. City of Kansas City,* 175 Kan. 794, 267 P. 2d 474; *Adams v. City of Arkansas City,* 188 Kan. 391, 362 P. 2d 829), and (2) for its negligent and wrongful acts (a) when performing in a proprietary capacity (*Dunn v. City of Emporia,* 181 Kan. 334, 311 P. 2d 296), and (b) for failure to keep its streets reasonably safe for public use. With respect to the latter, the general rule relating to public streets is stated in *Perry v. City of Wichita,* supra, as follows:

". . . An exception to the general rule also has been recognized with respect to defects in public streets on the theory they are necessary for the public use at all times and under all conditions. (*Harper v. City of Topeka,* 92 Kan. 11, 139 Pac. 1018; *Hibbard v. City of Wichita,* 98 Kan. 498, 501, 159 Pac. 399; *Foster v. Capital Gas and Electric Co.,* supra; *Smith v. Kansas City,* 158 Kan. 213, 146 P. 2d 660.)" (l. c. 269.)

The standard fixed by law concerning a city's duty to maintain its streets may be stated thusly: A city rests under the positive legal duty to keep its streets in a condition reasonably safe for their intended use, and it is liable in a civil action for injuries resulting from neglect to perform this duty. Streets must be such that the traveling public may use them and be reasonably secure. The decisions of this court illustrating the foregoing rule are legion; a few of them are: *City of Wellington v. Gregson,* 31 Kan. 99, 1 Pac. 253; *Gould v. City of Topeka,* 32 Kan. 485, 4 Pac. 822; *City of Olathe v. Mizee,* 48 Kan. 435, 29 Pac. 754; *Klipp v. City of Hoyt,* 99 Kan. 14, 160 Pac. 1000; *Evans v. City of Hutchinson,* 99 Kan. 477, 162 Pac. 342; *Blankenship v. City of Caney,* 149 Kan. 320, 326, 87 P. 2d 625; *Smith v. Kansas City,* 158 Kan. 213, 217, 146 P. 2d 660; *Perry v. City of Wichita,* supra, and *Snyder v. City of Concordia,* 182 Kan. 268, 320 P. 2d 820.

What constitutes an actual street defect was defined in *Loftin v. City of Kansas City,* 164 Kan. 412, 190 P. 2d 378, where it was held:

"To be actionable, a defect in a street must be a condition or object therein

which makes the street unsafe and dangerous for travel and use and is the legal cause of the injury of which complaint is made." (Syl. ¶ 1.)

In the final analysis, whether a particular condition or situation is a street defect depends upon the facts and circumstances of each case. (*McCollister v. City of Wichita*, 180 Kan. 401, 304 P. 2d 543; *Taggart v. Kansas City*, 156 Kan. 478, 134 P. 2d 417.)

It is not necessary that a defective condition be in the surface of the roadway; that is, in the pavement or the curb and gutter. If the condition is such that it affects the street to the extent that it is not reasonably safe for its intended use, a defective street condition exists. (*Burns v. Emporia*, 63 Kan. 285, 287, 65 Pac. 260; *Turner v. City of Wichita*, 139 Kan. 775, 33 P. 2d 335.) In the *Turner* case a limb from a tree located in the parking near the intersection of two streets fell and killed the plaintiff's son while he was proceeding on the street, and Mr. Justice Thiele, speaking for the court, said:

". . . Whatever might be said about maintenance of trees in a public park being a governmental function, here the tree stood in the street, and if the tree was defective, the defect must be treated similarly to other defective conditions in the street. . . ." (l. c. 777.)

It was further said:

". . . there is no liability, *unless the condition* of the trees or the limbs or branches thereof is so patently bad and *has existed for such length of time that permitting them to remain is equivalent to an utter disregard for the safety of the traveler in the street.* . . ." (l. c .778.) (Emphasis supplied.)

The city argues that the maintenance of stop and one-way street signs is an aspect of traffic regulation falling within the sphere of those activities which governmental immunity applies. It urges that *Freeburne v. City of Emporia*, 176 Kan. 503, 505, 271 P. 2d 298, and *Phillips v. State Highway Comm.*, 146 Kan. 112, 68 P. 2d 1087, support its contention that the sign in question was not a street defect. The cases are not helpful to the city. In the *Freeburne* case the plaintiff bumped his head on a traffic light control box installed on a pole near the curbline when he stepped up from the street to the sidewalk. The metal box housed the electrical apparatus for the control of traffic lights located in the intersection. The plaintiff conceded that the placing of the traffic control box on the pole was a governmental function and the question was whether, under the facts pleaded, the metal box constituted a street defect. On the basis of the record, this court concluded the plaintiff failed to allege facts sufficient to establish that the traffic control

box was in fact a street defect. The opinion stated the court took judicial notice of the fact there were countless and untold devices similar to the one there involved, such as stationary stop signs and one-way street signs and many other enumerated signs, which might be considered defects in city streets. However, the opinion restricted its application solely to the traffic control box there involved, and expressly stated this court was not passing upon the status of the enumerated signs as street defects.

In the *Phillips* case, *supra*, and a second appeal reported in 148 Kan. 702, 84 P. 2d 927, the action was brought under the provisions of G. S. 1935, 68-419 (now K. S. A. 68-419) known as the defective highway statute. Weeds had been permitted to grow so high as to hide a stop sign erected in the boundary of the state highway, at the intersection of a secondary road (township or county) and the state highway. The plaintiff came from the south on the secondary road and as her car entered the intersection of the two roads, a collision occurred between her car and one being driven west on the state highway. She contended that the fact the stop sign erected to warn travelers coming from the south on the secondary road of their near approach to the state highway, was hidden from view by a dense growth of weeds, constituted a statutory defect on the highway which subjected the commission to liability. At the time of the accident another statute directed that stop signs be erected at entrances of intersecting *state* and *federal* highways. It was held that since the statute required that stop signs be erected only at the intersecting entrances of *state* and *federal* highways, not at intersecting entrances of all public roads, this court had no right to enlarge the scope of the statute by judicial interpretation; that the liability of the commission was statutory, and actual negligence of the commission or its agents and employees was not an essential element of the action, and that since the commission had committed no breach of statutory duty with respect to the maintenance of the stop sign, the plaintiff could not prevail. It is obvious the *Phillips* cases are not in point. In the first place, the court was not required to determine whether the hidden stop sign was or was not a defect in the state highway; in the second place, this court has often declared that the liability of the state, its counties and townships, for damage caused by a defect in a public road, is not founded on negligence but is based specifically and exclusively on K. S. A. 68-301 and 68-419. (*Rakestraw v. State Highway Comm.*, 143 Kan.

87, 53 P. 2d 482.) In the instant case, there is no statute which creates a right of action against the city; its liability, if any, is based upon its negligent failure to keep its public streets in a condition reasonably safe for their intended use, and is governed by the well-known legal standards of conduct known in the law of negligence. (*Dunn v. City of Emporia*, supra.)

The city argues the sign was no physical part of the street and was not used for street purposes. We do not agree. The record shows that the stop and one-way sign was installed by the city in the parking near the curbline of the traveled portion of the street. A street, like a public highway, is the entire way between the property lines of the abutting owners. Usually, it is dedicated for street purposes and although the title to the street is placed elsewhere, the control and maintenance of the street is vested in the governing body of the city. Generally speaking, a street consists of three parts: (1) a roadway or vehicle-travel portion, usually in the middle, or the whole street may be the roadway; (2) the parking on one side or both sides of the roadway, and sometimes there are no parkings, and (3) sidewalks which are usually close to the property line or sometimes at the curb, and there may be no sidewalks. (Albert B. Martin, Sovereign-Governmental Immunity, League of Kansas Municipalities, 1965, pp. 37, 38.) See, also, *Paola v. Wentz*, 79 Kan. 148, 98 Pac. 775; *Ditzen v. Kansas City*, 138 Kan. 830, 28 P. 2d 739, and *Heinzelman v. State Highway Commission*, 188 Kan. 129, 360 P. 2d 1114. Where, as here, the city has exercised the discretion vested in it to designate through streets and provide for stop signs at each intersection facing the subordinate street, except at those intersections where the traffic on the through street is controlled by traffic signals or stop signs as provided in Section 26-801 of the city ordinance, the sign becomes an important part of the physical appurtenance of the street and is used for street purposes. The rule is stated in 18 McQuillin, Municipal Corporations, 3d ed., § 53.42, as follows:

". . . Stop signs become important parts of the physical appurtenances of the street, and failure of a city to put a sign back up after a vehicle accidentally knocked it down has been regarded as a failure to maintain public highways and streets in reasonable repair. A city may be held responsible for an automobile collision resulting from its negligent failure to maintain a stop sign at an intersection of a street designated by ordinance as a through street." (pp. 235, 236.)

The purpose of designating certain streets as through streets is to expedite traffic insofar as speed is consistent with safety, and to protect travelers on intersecting and through streets from the dangers of collision. Both Tyler and Huntoon Streets had been accorded official priority by ordinances of the city creating them one-way through streets and providing for stop signs at each intersection, except that Tyler Street traffic was required to stop before entering or crossing Huntoon. The stop and one-way sign was installed for the purpose of making the street safe for travel, but it was not in its normal or usual position in the street at the time of plaintiff's accident; it had been knocked down or bent over and served no purpose to regulate traffic or warn and command persons to stop before proceeding into the Huntoon intersection. That the sign was defective is evident, and being a physical part of the street, it must be treated similar to other defective conditions in the street. (*Turner v. City of Wichita,* supra.)

Under the record presented, it may not be said as a matter of law that the city did not have notice of the condition and opportunity to correct it. Whether the city's failure to replace or warn concerning the knocked down or bent over sign within the 20-hour period was negligence, and whether it was the proximate cause of plaintiff's accident, are questions of fact to be determined by a jury. In *Dunn v. City of Emporia,* supra, it was said:

".  .  . The liability of a city for negligent conduct is founded upon the well-known legal standards of conduct known in the law of negligence. The city has a legal duty to use that degree of care, caution, diligence and skill as common prudence directs for the protection of members of the public from injury. The failure of such duty in an ordinary and natural sequence which causes unintended injury to a member of the public gives rise to liability in an action for negligence." (l. c. 339.)

In *Evans v. City of Hutchinson,* supra, it was said:

".  .  . The ordinary rule, however, as shown by cases cited in the notes referred to, is that liability depends on whether an injury such as that complained of should have been anticipated, by the exercise of reasonable prudence, as the result of the defect in question. Each case turns to a large extent upon its own peculiar features  .  .  . Whether such an accident ought, by the use of a fair degree of diligence, to have been anticipated and guarded against is a matter about which reasonable minds may differ, and therefore the question of the liability of the city was properly submitted to the jury.  .  .

".  .  . where reasonable minds may differ as to the dangerous character of a defect in a street, the doubt *may,* not *must,* be given to the city

authorities, by the tribunal charged with passing on the matter. (*Klipp v. City of Hoyt,* ante, p. 14, 160 Pac. 1000.)" (l. c. 479.)

This court has never held that municipalities are insurers for the traveling public, but it is well settled they have a positive legal duty to keep their streets in a condition reasonably safe and convenient for the traveling public and they have no right or discretion to evade or avoid that duty. (*Gould v. City of Topeka,* supra.)

In view of the foregoing, we deem it unnecessary to discuss other points advanced by the plaintiff. The order sustaining the defendant's motion for summary judgment is reversed and the case is remanded to the district court for a trial upon the issues framed by the pleadings.

It is so ordered.

PARKER, C. J., and PRICE, J., dissent.