No. 33,055

MAUDE BILLINGS, *Appellee,* v. THE CITY OF WICHITA, *Appellant.*

(62 P. 2d 869)

Opinion filed December 12, 1936.

*Vincent F. Hiebsch, K. W. Pringle* and *Forest V. McCalley,* all of Wichita, for the appellant.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action against the city of Wichita, for damages resulting from personal injuries due to a fall on an alleged defective sidewalk. Plaintiff recovered, and defendant appeals.

Defendant first contends the trial court erred in overruling its demurrer to plaintiff's evidence for the reason plaintiff's evidence showed she was guilty of contributory negligence.

The pertinent facts disclosed by plaintiff's evidence were:

The accident occurred on October 16, 1934, at about ten-thirty or eleven o'clock in the morning. It was a bright, clear day. Plaintiff was a woman about sixty years of age, and was walking in a southerly direction, at a normal gait, on a cement sidewalk of standard width. The sidewalk had been constructed in blocks. It had been broken down in the center and crumbled away towards the sides. The sidewalk was only about four inches deep and had crumbled to a depth of about two and one half or three inches. There was also evidence the hole was about as deep as the sidewalk, except for what little amount of gravel had worked into the holes. The crumbled place into which plaintiff stepped was about one and one half feet long north and south, and about two or three feet wide east and west. This condition had existed for a little over three years. The broken place had grown up with grass and grass roots which were as high or perhaps a little higher than the sidewalk. Concealed in the grass and among the roots there were loose pieces of cement, rock and gravel. There were two or three places similar to that described. Plaintiff, before stepping on this grass, noted the general condition of the sidewalk, but did not see the concealed pieces of concrete, stones and gravel. Not realizing the sidewalk was unsafe or dangerous, she attempted to pass over it. As she did so her ankle was turned on the stones or pebbles and she was thrown forward and sustained injuries. Plaintiff had not passed over the sidewalk in question for years. She testified she might have been able to walk along one side of the sidewalk and have avoided the rough place. From the picture of the sidewalk it would appear she could have done so. She did not notice its being in the bad condition it actually was.

Three of the special findings made by the jury may be properly considered under plaintiff's first contention. They are:

"1. Was the sidewalk in question in a reasonably safe and suitable condition for its intended use at the time the plaintiff crossed it? A. No.

"3. If you answer question No. 1 in the negative, state whether any portion of the defective condition was concealed from the view of the plaintiff immediately prior to the accident?  A.  Yes.

"7. Of what acts of negligence, if any, was the plaintiff guilty?  A.  None at all."

No motions to strike the answers to these questions were made by defendant on the ground they were unsupported by substantial, competent evidence.  Furthermore, plaintiff's evidence sustained those findings.  Defendant contends plaintiff saw the defective condition and should have walked around it.  This contention ignores the fact the defect which actually caused the injury, according to the uncontradicted evidence, was not the mere break in the sidewalk which was visible, but the cement, rocks or gravel which were concealed within the break.  The evidence was that the concealed defects, the pieces of cement, stones and gravel, were not observed until after the accident.  There is no evidence indicating that with exercise of ordinary diligence the concealed defects could or should have been observed by a pedestrian who was perhaps passing over the defective place for the first time.  There is no evidence plaintiff had ever before seen the sidewalk in its defective condition.  Her statement on direct examination was: "I had not been over the sidewalk in question for years."  On cross-examination the question of how long ago that had been or the condition of the sidewalk at that time, was not pursued.  There is, therefore, no basis for assuming plaintiff had ever before seen the sidewalk in that condition.  The city had at least constructive notice of the general defective condition of this sidewalk for over three years.  The casualty occurred on October 16, 1934, and Mrs. Thompson testified the sidewalk was in this condition in September of 1931, when she moved into Park Place.  How long the defective condition existed prior to September, 1931, is not indicated.

In considering a demurrer all evidence favorable to plaintiff must, of course, be accepted as true.  It has been repeatedly ruled, if the question of contributory negligence is reasonably open to debate— one on which reasonable minds might differ—it is a question of fact for the jury.  (Keir v. Trager, 134 Kan. 505, 7 P. 2d 49; Deardorf v. Shell Petroleum Corp., 136 Kan. 95, 12 P. 2d 1103; Hill v. Southern Kansas Stage Lines Co., 143 Kan. 44, 53 P. 2d 923, and cases therein cited.)

Defendant, however, contends the city is not answerable for the injuries resulting from defects that reasonable care and diligence

on the part of the city authorities could not have discovered and remedied. (*City of Emporia v. Schmidling*, 33 Kan. 485, 6 Pac. 893; *McCoy v. City of Wichita*, 86 Kan. 943, 122 Pac. 894; *Boddington v. Kansas City*, 95 Kan. 189, 148 Pac. 252; *Ade v. City of Wichita*, 141 Kan. 497, 41 P. 2d 734.) There is no dispute concerning the correctness of that principle of law. The trouble is the city had ample time to discover the defect and to remedy it before the injury occurred. Counsel for defendant says: "There is no question but that the defect at the place in question existed for a sufficient length of time so that the city should have had notice that it was there." It is admitted, not only that the city could have had notice of the defect, but, further, that it should have had such notice it was there. That being true, it was the duty of the city to remedy the defect. Had it done its duty there would have been no injury.

Much reliance is placed by defendant on the Ade case. The facts involving contributory negligence are not, analogous. As previously indicated, there was no evidence plaintiff had any previous knowledge of the existing dangerous condition. In the Ade case plaintiff had such knowledge previous to her injury. She had previously avoided the icy condition on the south side of the street, because she knew it was dangerous and, for that reason, was afraid to cross on that side. On the occasion of her injury she crossed over to the south side which she knew to be dangerous. Furthermore, without any concealed defects, but, on the contrary, with full knowledge of the dangerous condition, she proceeded along that icy crossing in the same manner she usually walked along the sidewalk. In the Ade case it was said:

"The rule is that the use of an apparently defective walk does not charge the user with negligence, provided the user exercises care such as an ordinarily prudent person would exercise under similar circumstances, but where the undisputed evidence shows that the plaintiff, with full knowledge of the situation and the claimed dangerous condition, not only did not affirmatively act with ordinary care, but proceeded in utter disregard of possible consequences, she cannot recover, and a demurrer to such evidence should be sustained." (Syl. ¶ 2.)

It will thus be seen plaintiff, in the instant case, could not be charged with negligence simply because she used a sidewalk which contained some apparent defect. Whether she in fact used it, as to the apparent defect, in the exercise of reasonable care was, under the circumstances in this case, clearly a question for the jury. That being true, she certainly could not be charged with contributory neg-

ligence as a matter of law by reason of injury resulting from concealed defects. The demurrer was properly overruled.

The defendant city next urges the court erred in overruling its motion for judgment upon the special findings and for judgment notwithstanding the general verdict. The special findings of the jury were:

"1. Was the sidewalk in question in a reasonably safe and suitable condition for its intended use at the time the plaintiff crossed it? A. No.

"2. If you answer question No. 1 in the negative, did the plaintiff see the defective condition before the accident? A. Yes.

"3. If you answer question No. 1 in the negative, state whether any portion of the defective condition was concealed from the view of the plaintiff immediately prior to the accident. A. Yes.

"4. Did the plaintiff regard the condition of the sidewalk as unsafe as she crossed it? A. No.

"5. Would any reasonably prudent person have regarded the condition as unsafe at that time? A. No.

"6. If you find for the plaintiff, state the acts of negligence of which you find the defendant guilty. A. Failure to repair sidewalk on the east side of street in the 1600 block on Park Place at about 20 to 25 feet south of the south side of walk on 1600th street.

"7. Of what acts of negligence, if any, was the plaintiff guilty? A. None at all."

The real question is, Can these findings be harmonized with each other, and if so, do they sustain the general verdict? In this consideration we are guided by definitely established principles. Although variously expressed, the substance of these principles is, the findings must be so construed as to harmonize them and thus uphold the general verdict, if possible to do so. This rule necessarily demands consideration of all findings as a unit and obviously prohibits consideration of any of them separately or by selected or isolated groups. Next, where the special findings are fairly susceptible of more than one interpretation, the one which harmonizes with the general verdict should be adopted rather than the one which points to inconsistency. (*Burnell v. Bradbury*, 69 Kan. 444, 77 Pac. 85; *Briggs v. Shepler*, 115 Kan. 614, 224 Pac. 61; *Wilson v. Fowler Packing Co.*, 123 Kan. 470, 225 Pac. 1109; *Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155; *Greiner v. Greiner*, 129 Kan. 435, 283 Pac. 651; *Jordan v. Austin Securities Co.*, 142 Kan. 631, 51 P. 2d 38; *Sluss v. Brown-Crummer Inv. Co.*, 143 Kan. 14, 17, 53 P. 2d 900.) The city asserts it has no quarrel with these authorities but insists the answers do not harmonize. We believe if the above rules are properly applied the answers are not inconsistent with the gen-

eral verdict under the correct principles of law governing the facts in this case. It may be well to state there are no objections to the instructions given.

Defendant says answer No. 2 shows plaintiff saw the defective condition. It urges plaintiff saw the defect and the gravel. She did see the general condition of a broken sidewalk and some gravel on the sidewalk outside of the broken part. Answer No. 3, however, clearly shows a portion of the defective condition was concealed. It was these concealed substances which turned her ankle and not the mere visible break in the sidewalk or gravel exposed to view on the sidewalk. Answers Nos. 4 and 5 were in all probability answered as they were because a portion of the defect was concealed, as shown by answer No. 3. Answer No. 7 further indicates that taking into account the fact a portion of the defect was concealed, plaintiff was guilty of no negligence.

Next, defendant contends questions Nos. 2, 3 and 4 expressly applied to plaintiff, but that question No. 5 referred to a reasonably prudent person and had nothing whatever to do with the attitude of plaintiff or her view of the situation, but determined only the degree of care required of a city. The contention is not sound. Whoever submitted question No. 5 may not have intended it as applicable to plaintiff, but that does not prevent the answer from applying to plaintiff, nor from applying to her as a reasonably prudent person. There is no evidence tending to show she was not such a person, and the word "person" was expressly employed.

Let us now further pursue defendant's contention it was entitled to judgment under the special findings as a matter of law. It insists special finding No. 5 made this result imperative. The contention is based on the theory the city's degree of care is that of a reasonably prudent person, and that answer No. 5 therefore absolved it of liability. Let us assume for the moment answer No. 5 applied only to the city. Is the city's degree of care in the discovery of defects in its sidewalks limited and restricted to that of an ordinarily prudent person, such as a casual pedestrian who passes over the defect for perhaps the first time? Defendant in effect contends it is. In support of its contention it relies in part on the authorities of *City of Emporia v. Schmidling,* 33 Kan. 485, 6 Pac. 893, and *Swope v. City of Wichita,* 141 Kan. 388, 41 P. 2d 987. Neither case supports defendant's contention. In the Emporia case it was held:

"Incorporated cities are required to construct and maintain their streets and sidewalks in a reasonably safe and suitable condition for their intended use and for the travel that usually passes over them; they are not held to put and keep them in an intrinsically perfect condition, nor are they answerable for injuries resulting from defects *that reasonable care and diligence on the part of the city authorities could not have discovered and remedied.*" (Syl. ¶3.)   (Italics inserted.)

Defendant, in the instant case, admits the defect was there for a sufficient length of time that the city should have had notice of it. Furthermore, defendant's street inspector, after the injury and without knowledge of the injury, on January 18, 1936, looked at the sidewalk for the first time and immediately condemned it and had it repaired.  This circumstance is no evidence of previous notice by the city, but it is recognition of the fact by the city the sidewalk was in need of repair. (*City of Emporia v. Schmidling,* supra.) Yet, the sidewalk in the instant case had been in the same condition since September, 1931.  It cannot be said, as a matter of law, this constituted reasonable care and diligence on the part of the city in discovering and remedying the defect.  That was a jury question.

In the Swope case the judgment for plaintiff was reversed by this court.  The action arose over a limb which was broken from a tree during a windstorm.  The city had previously examined the tree after notice.  It was there said:

"The rule is uniform that we are limited to the feature of negligence found by the jury, regardless of the many features of negligence pleaded.  Here we are limited to the neglect to remove the tree after notice and examination. Counsel knew something else was necessary as to why it should be removed and asked for facts, and the answer gave no facts.

"These answers are not inconsistent with each other, but are inconsistent with the general verdict, because no reason was given for removing the tree or any facts that would make it subject to removal, except those shown after the accident to have existed before the accident.  The general information known to plaintiff and defendant alike after the tree had blown down will not supply this omission as to facts of negligence before the accident, when the other answers are so strong to the effect that the unsafe condition could not be observed by an ordinarily prudent person.  The closing lines of the syllabus, quoted above from the Turner case, *supra,* are particularly applicable here:

" ' . . . there is no liability, unless the condition of the tree or the limbs or branches thereof is so patently bad and has existed for such length of time that permitting them to remain is equivalent to an utter disregard of the safety of the traveler in the street.' "  (p. 392.)

The foregoing principle does not help the city in this case, but is rather strong authority for plaintiff's contention.  The hole in the

sidewalk, described variously as from two to four inches in depth, had existed for over three years, and the city had made no inspection and hence had done nothing to remedy the condition. Immediately, however, upon later inspection the sidewalk was condemned and repaired.

Defendant further relies upon the authority of 7 McQuillan on Municipal Corporations, 2d ed., § 2910, where it is said:

"The general rule followed by the weight of authority is that the municipality is only required to exercise ordinary or reasonable care, that care (as constantly expressed by early and late judicial utterances, with slight or no deviation) which an ordinarily prudent man would exercise under like circumstances, in maintaining public ways at all times in a reasonably safe condition for travel in the usual modes and for the customary street uses." (p. 32.)

Now, what is required of an ordinarily prudent person who is made responsible for proper care of streets and sidewalks, and what must plaintiff show in order to recover when a dangerous condition has existed for over three years? The same author, and in the same paragraph, says:

"A plaintiff must show, in order to recover, not that an injury has happened which no one would have anticipated, but that there were conditions such that the authorities, in the exercise of proper care, ought to have realized that there was danger of an injury, and to have taken precautions to prevent it." (p. 37.)

Again, in section 2911, the same author says:

"In the application of the rule requiring reasonable care, to particular sets of facts, it is held that if the street has once been constructed in a safe condition, the only duty of the municipality is to exercise reasonable care in the discovery and repair of defects; that the duty to observe the condition of its streets, according to most of the decisions, is a greater one than the duty of the traveler." (p. 41.)

In the same text the rule is further stated, thus:

"Municipalities are under some measure of active duty in the matter of inspection and of taking care to know that the streets, the care of which is imposed upon them by statute, do not become sources of danger to the traveling public. While many cases hold that notice is not imputable to the municipality unless the defect is so notorious as to be observable by all, the majority hold that the mere fact the defect was hidden and the municipality had no actual notice of it, as above indicated, will not of itself exclude municipal liability, if the defect was of such nature and had existed for such period of time that ordinary caution on the part of the proper municipal authorities would have discovered it. Even if a defect is not open and notorious to casual observers, a municipality must exercise ordinary care to keep its public ways reasonably safe for travelers. The better rule, it is believed, is that a

greater duty to discover defects is imposed on the municipality than on passers-by." (p. 248, § 3004.)

In *Platts v. City of Ottumwa*, 148 Ia. 636, 127 N. W. 990, it was said:

"It certainly is not true that the city is charged with no greater duty or obligation to observe the condition of its walks, or to know of the existence of dangerous defects therein, than the ordinary citizen or traveler who has occasion to use them. On the contrary, these municipalities are under some measure of active duty in the matter of inspection, and of taking care to know that the streets, the care of which is imposed upon them by statute, do not become sources of danger to the traveling public. The traveler has the right to assume that the city has done its duty, and while he is himself subject to the rule which requires the exercise of reasonable care and watchfulness for his own safety, he is not required at his peril and as a matter of law to keep his eye glued to the sidewalk or to constantly watch his footsteps to avoid stepping into holes or depressions therein, the existence of which has not come to his notice. He has a right to assume that the city has done its duty." (p. 639.)

In *Idlett v. Atlanta*, 123 Ga. 821, 51 S. E. 709, it was said:

"As said in the case of *Wilson v. Atlanta*, 63 Ga. 291, supra, while the city and the passer are both required to exercise ordinary diligence, the duty of keeping its streets and sidewalks in repair rests upon the city, and therefore ordinary diligence on its part and ordinary diligence on the part of one who passes along a sidewalk do not imply a like degree of diligence in foreseeing danger and guarding against it. The argument, therefore, that if the city could have known of the danger of this defective sidewalk, the plaintiff also could have known of it, is not sound." (p. 826.)

From what has been said it follows the special findings were not inconsistent with each other, nor with the general verdict, and the judgment must be affirmed. It is so ordered.