No. 40,508

Dale Dunn, *Appellant*, v. The City of Emporia, Kansas, *Appellee*.

(311 P. 2d 296)

Opinion filed May 11, 1957.

*Alex Hotchkiss*, of Lyndon, argued the cause; *Champ Graham*, of Emporia, was with him on the briefs for appellant.

*Roy U. Jordan,* of Emporia, argued the cause and was on the ·briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal from an order of the lower court sustaining a demurrer to the petition of the plaintiff.

Throughout this opinion the appellant, Dale Dunn, will be referred to as the plaintiff, and The City of Emporia, Kansas, appellee, will be referred to as the defendant.

The plaintiff, a student at Kansas State Teachers College, at Emporia, Kansas, while clothed in tennis shorts and tennis shoes, was walking from the campus along the side of a public sidewalk to the tennis courts some distance from the school and in so doing fell into a defective water meter box upon which was located a metal cover, which was approximately nine and one-half inches from the edge of the sidewalk in what is commonly known as the parking. This action was brought against the city charging it with negligence.

Insofar as is material herein the petition alleges:

"4. That said street was defective and said defendant negligently failed to provide and keep said street in a reasonably safe and suitable condition for the use of the public as a way of travel and of the plaintiff in particular in this, to-wit:

"(*a*) That at all times material hereto defendant owned, operated, maintained and controlled a water system. Said system included a meter, meter box or container, and cover installed by said city in the parking at 1525 Merchant Street, Emporia, Kansas. Said meter box and the sides thereof were made of tile and the meter box cover, approximately 16 inches in diameter, was made of metal. Said meter box or container was buried in the ground with the top or metal cover thereof approximately flush with the surrounding area and said metal cover constituted the surface of the street at such place. Said meter box or container was approximately 9½ inches east of the sidewalk on the west side of Merchant Street.

"(*b*) That during all of the times material hereto said meter box or container was damaged, cracked and broken and did not provide adequate and proper support for the metal cover provided as surface of the street.

"(*c*) That such condition had existed from on and prior to August 25, 1955, to the date of injury hereinafter alleged and by the exercise of ordinary diligence could have been discovered by said defendant and said defendant knew or should have known of such defective condition in said street. That on or about August 25, 1955, notice was given to the defendant through its then City Clerk of the condition of said meter box or container and through other agents, servants and employees, the names of whom are not known to plaintiff but well known to defendant, said defendant had actual knowledge of such defective condition. That although there was adequate time to do so prior

to the injury hereinafter alleged, the defendant failed and neglected to repair the same and to put said street in a reasonably safe and suitable condition for use of pedestrian travel.

"5. That on or about October 7, 1955, at about 10:00 o'clock a. m. thereof, plaintiff was a student in the Kansas State Teachers College, at Emporia, Kansas, and was one of several students in a tennis class, and was wearing tennis shorts and tennis shoes walking northward on Merchant Street in said Emporia, Kansas, from the College Gymnasium of said College to tennis courts located at or near the intersection of Merchant Street and Eighteenth Avenue in said City of Emporia.

"6. That at said time and place while walking northward as aforesaid plaintiff stepped on said metal cover and as he did so said metal cover and the damaged, cracked and broken tile under the same gave way and permitted his left leg to fall into and upon said meter box and container, as a result of which he received the bodily injuries hereinafter set out and described."

The petition further alleged that written notice was given to the defendant within three months as required by law; that the negligence of the defendant was the direct and proximate cause of injuries received by the plaintiff; and then set forth his damages by reason of the injuries sustained.

The defendant demurred to the petition of the plaintiff on the ground that it did not state facts sufficient to constitute a cause of action against The City of Emporia, and the lower court sustained the demurrer.

The only question before this court for review is whether the trial court erred in sustaining the defendant's demurrer to the plaintiff's petition.

On facts somewhat similar to those presented in the above petition this court has had many cases. In some cases the petitions have been held valid, and in others they have been held not to state a cause of action. An effort will be made to review most of these cases to clarify the underlying reasons why in one instance a petition is held to state a cause of action and in another is held to be defective.

The plaintiff cites and relies on *Potter v. City of Coffeyville,* 142 Kan. 183, 45 P. 2d 844, where the factual situation alleged is almost identical to the instant case. In that case a pedestrian passing along a sidewalk stepped upon a concrete lid covering a water meter, located near the sidewalk. The lid gave way causing her to fall and receive injuries. A demurrer to the petition was overruled. The decision in the *Potter* case turned upon specific considerations then before the court which are not material herein. The defendant there sought by a motion to make definite and certain to force the

plaintiff into pleading contributory negligence. The defendant did not appear upon presentation of the motion and when the petition was later attacked by a demurrer, this court held that defendant had virtually abandoned his original motion which was overruled. As there presented the defendant *admitted at the hearing that the cause of action was properly stated in the petition* unless his motion which had been overruled was carried over to the demurrer. We must therefore ignore the *Potter* case as a precedent for the point herein presented.

To orient our thinking it will be well to review some of the basic legal theories with which we are dealing. Justice Wedell, speaking for the court in *Perry v. City of Wichita,* 174 Kan. 264, 255 P. 2d 667, said:

". . . Before considering our own cases it should be frankly conceded there is considerable divergence of opinion among courts and textwriters relative to whether certain activities of cities constitute governmental functions or functions interchangeably referred to as proprietary, corporate and municipal. Some difference of opinion also obtains concerning the liability of cities when exercising either function. It would constitute a futile effort to attempt to harmonize the decisions as different courts have reached contrary conclusions on the same or highly similar facts . . ." (p. 268.)

In the *Perry* case the Kansas law, amply supported by authorities, was reviewed as follows:

"That a city, the same as an individual, is liable in damages for its negligent or wrongful acts when performed in a proprietary capacity is firmly established. The general rule, however, in this state, is that a city is not liable for negligent acts of its officers or employees when acting in the performance of governmental functions, absent a statute expressly imposing liability . . . The rule is based on the doctrine that the state is not liable except as made so by statute and that municipalities, governmental subdivisions of the state, when acting in a governmental capacity are arms of the state.

"Exceptions to the general rule have been recognized where the city's conduct results in creating or maintaining a nuisance . . . An exception to the general rule also has been recognized with respect to defects in public streets on the theory they are necessary for the public use at all times and under all conditions . . .

. . . . . . . . . . .

". . . Decisions holding that ordinarily the construction and maintenance of sewers constitute governmental functions must not be confused with the decision in *Smith v. Kansas City,* supra, [158 Kan. 213, 146 P. 2d 660] in which a sewer was indirectly involved and in which the city was held liable. As clearly indicated in that case, although the catch basin which had a defective lid was connected with the city sewer system, the catch basin was located in a portion of the street. Liability was there predicated on the ground the injury was caused by a defect in the street." (pp. 268, 269, 270.)

Relative to the duty which rests upon a city to maintain its streets, the cases hold that there is no general duty upon a city to respond in damages for failure to repair slight defects or imperfections, which as a matter of law are not actionable. (*McCollister v. City of Wichita*, 180 Kan. 401, 304 P. 2d 543; *Biby v. City of Wichita*, 151 Kan. 981, 101 P. 2d 919, and cases cited therein.) The cases likewise support the doctrine that cities should not be held to the same degree of care in maintaining parkings or parkways as they are in maintaining sidewalks and streets. Parkings or parkways are not classed primarily as public thoroughfares. While it is difficult, and perhaps impossible, to lay down a definite rule covering the degree of care required in maintaining the parkings or parkways, this court has not adopted a broad rule absolving a city from all liability. (*Gilmore v. Kansas City*, 157 Kan. 552, 142 P. 2d 699.) In each case all of the particular facts and circumstances must be considered.

The term "street" as commonly used denotes a public thoroughfare or highway in a city or village. In its broad sense, as used herein, the street embraces the entire public easement, including the sidewalk and parking or parkway. Thus, when the term is generally used in connection with the city's duty to maintain the streets, it is used in the broad sense. In dealing with a specific situation the obligation of a city is predicated upon its duty to the public on the particular component part of the street under consideration.

The cases in point dealing with defects in the city streets are presented on two different theories. Where the defect consists primarily in street maintenance the liability is predicated on the duty of the city to maintain its streets in a safe condition for the public use at all times and under all conditions. The other theory predicates liability on the city for activities which it conducts and performs in a proprietary capacity such as the maintenance and operation of waterworks facilities and electric light plant facilities.

The plaintiff urges that if this court should determine there is no liability on the part of the defendant city because of a defective street, then the defendant is liable in its private or proprietary capacity for its negligence in maintaining a defective meter box as a part of its waterworks system. We pause to note that plaintiff alleged written notice was given to the defendant city within three months after the accident as required by law; therefore, any dis-

tinction in the two theories of liability on the ground of notice is immaterial to a decision herein. Failure to give notice was material in *Harms v. City of Beatrice*, 142 Neb. 219, 5 NW 2d 287; see, also, 142 A. L. R. 239.

The position urged by the plaintiff implies that the obligation of a city in its proprietary function is greater than its obligation in the maintenance of a street. We see no sound basis for making such distinction. The liability of a city for negligent conduct is founded upon the well-known legal standards of conduct known in, the law of negligence. The city has a legal duty to use that degree of care, caution, diligence and skill as common prudence directs for the protection of members of the public from injury. The failure of such duty in an ordinary and natural sequence which causes unintended injury to a member of the public gives rise to liability in an action for negligence.

To say that common prudence directs a definite standard in the law of negligence concerning the liability of a city in the maintenance of its streets and another standard for the liability of a city in the maintenance of its waterworks facilities would be to burden the law with unnecessary distinctions and prove untenable, particularly where on a given set of facts and circumstances the results would be inconsistent depending upon which of the two theories was applied.

Turning our attention now to the various elements considered by this court in cases analogous on the facts which touch upon defects in the city streets, we shall endeavor to show the underlying principles which indicate why in certain instances a petition has been held valid and why in others it has not been so held.

Cases in point in which the liability of a city has been determined in connection with its duty to maintain the public streets are *Dargatz v. Dodge City*, 151 Kan. 747, 100 P. 2d 680; *Register v. City of Pittsburg*, 139 Kan. 753, 33 P. 2d 173; *Mead v. City of Coffeyville*, 152 Kan. 799, 107 P. 2d 711; *Smith v. City of Emporia*, 169 Kan. 359, 219 P. 2d 451; *McCollister v. City of Wichita*, supra; *Kirkham v. Kansas City*, 89 Kan. 651, 132 Pac. 160; *Klipp v. City of Hoyt*, 99 Kan. 14, 160 Pac. 1000; *Smith v. Kansas City*, 158 Kan. 213, 146 P. 2d 660; and *Hack v. City of Pittsburg*, 145 Kan. 383, 65 P. 2d 580.

In *Gilmore v. Kansas City*, supra, the opinion refers to the liability of a city in its proprietary capacity and also speaks of the city's

liability relative to its maintenance of the public streets. In its proprietary capacity the city was said to be bound to the same degree of care in maintaining an electric light system, which it operated, as a privately-owned public utility, citing *Webb v. City of Oswego*, 149 Kan. 156, 86 P. 2d 553. In the case of *Potter v. City of Coffeyville*, supra, the petition was couched throughout as one charging liability against the city in its proprietary capacity, although, as heretofore noted, the case was decided on another ground.

The defendant contends that the cases on this subject may be distinguished by a consideration of four factors, among others, and urges that the accident in the case at bar is alleged to have arisen in broad daylight, hence no cause of action is stated. These factors enumerated by the defendant are:

"1. Was it daylight or darkness?

"2. Was the parking customarily used by pedestrians?

"3. Was there any necessity or any excuse even for the pedestrian to walk across the parking?

"4. Was the obstruction or defect concealed or was it in plain sight?"

While it is true that these factors have been considered together with all the other facts and circumstances in a given case, it is difficult to analyze the cases on the basis of these factors alone and come to a rational conclusion.

This court in *Dargatz v. Dodge City*, supra, was dealing with a depression in a portion of the parkway between the sidewalk and the curb which was surfaced with sand and gravel. The depression was five to seven inches deep and about fifteen inches wide by two feet long. It was described as a washout caused by water from rain or snow. There the plaintiff was injured at about 10:00 o'clock p. m., where the street was dark and insufficiently lighted, on a busy street where many cars were usually parked during the days and evenings and at a place where persons ordinarily walked across the parking. In sustaining a demurrer to the petition of the plaintiff this court said:

". . . The plaintiff had no right to expect the parking to be in as safe a condition as was the walk. The city is held to a high degree of care as to sidewalks, but to hold it to the same degree of care as to [a] parking would place a burden upon cities with which they would not be able to cope. Sidewalks are made of concrete or brick, while the parkings are of sod or earth, or, as in this case, sand or gravel. At any rate, *they are more vulnerable to the ravages of weather—such as the washing caused by rain or snow*—than are sidewalks or cross walks. It will not do to make the city the insurer of the

safety of everyone who uses the parkings to get to or go from his car. There must be negligence on the part of the city in order to make the defect an actionable one. *We cannot hold that to permit a place such as is described in this petition to exist was negligence."* (p. 749.) (Emphasis added.)

Again in the case of *Register v. City of Pittsburg*, supra, the court held in sustaining a demurrer to the evidence of the plaintiff that it was *not actionable negligence* against the city where a girl ten years of age stepped up on a curb to cross a parkway covered by grass which was not intended for foot travel, the curb being defective in that it contained a depression one and one-fourth inches deep by six inches long which had scaled off, thereby causing the girl to fall. After citing a number of cases this court there said:

"While the cases cited authorize a recovery under the facts, they also recognize that there are degrees of care to be exercised, and *right of recovery varies according to the place where the accident occurred, and what the duties of the city were as to keeping such places safe for travel, and the use that might be expected to be made by users of certain parts of the street. The same care is not to be expected by people who are angling across the street over a curb and parkway as in places set apart for travelers, like sidewalks and crosswalks."* (p. 754.) (Emphasis added.)

Likewise an iron stake five inches high and about one-fourth inch in diameter located in the parkway between the sidewalk and the curb was held in *Mead v. City of Coffeyville*, supra, not to be actionable negligence against the city. At this particular location the plaintiff was a customer parked in front of a fish market and crossed the parkway tripping over the iron stake in broad daylight. Under all the facts and circumstances alleged, particularly in view of what the petition did not allege, failure of the city to discover the stake was not negligence.

This court again held that a city was not negligent in *Smith v. City of Emporia*, supra, where a pedestrian slipped on debris and fell into a drain on the edge of a city street, where the plaintiff did not follow the sidewalk and normal crosswalk provided in attempting to cross the street. The basis for the ruling in this case was that the city was *not held to the same degree of care in maintaining the portion of its streets used for vehicular traffic in a safe condition for pedestrians as it would be in the case of sidewalks.*

In *Gilmore v. Kansas City*, supra, it was held that plaintiff had presented sufficient evidence to withstand a demurrer when plaintiff fell into a hole twelve to fourteen inches in diameter and about two and one-half feet deep, the rim of which consisted of rough cement, where the hole was more or less obstructed by grass and weeds in

a narrow parkway three to four feet wide. At the time of the accident it was dark and the location was in a busy downtown business area where cars were frequently parked and pedestrians crossed the parkway. There was evidence that the hole was caused by the removal of an electric light pole by the city operating a public utility in its proprietary capacity, although the basis of the ruling was not that the city was operating in its proprietary capacity since the decision quotes also cases concerning the obligation of a city to maintain its streets. The direct basis of the ruling in this case was that *the court regarded the hole as a serious defect and not a slight one,* at least, sufficient under all the facts and circumstances to permit the case to go to a jury on the ground of negligence.

In *McCollister v. City of Wichita,* supra, under congested traffic and parking conditions, a petition was held to state a good cause of action for injuries received by the plaintiff in tripping over an irregular depression three and one-half inches deep and three feet in diameter in the gutter of the street. The accident occurred at night and the defect was hidden by deep shadows without any warning lights or device at the location of the defect. The accident occurred at a place where pedestrians customarily and ordinarily traveled in alighting from vehicles and going to them. The case was distinguished from *Smith v. City of Emporia,* supra, on the ground that the City of Wichita *was bound to anticipate that pedestrians would walk at the place of this particular defect, and was thereby responsible for a higher degree of care* than was the city in the *Smith* case.

In the case of *Kirkham v. Kansas City,* supra, a pathway had been made by cutting weeds from a tent on adjacent property across the parkway to the sidewalk. It was there held that the evidence was sufficient to go to a jury where the plaintiff was injured by falling from the parkway to the sidewalk which was twelve to eighteen inches below the ground level on a dark night where no lights, barriers or other means of warning were given. Numerous persons used this pathway and the court there said in 1913 after reviewing many decisions:

"These citations are sufficient to support the doctrine that a city must use reasonable care to keep its streets and sidewalks safe for travel, the kind and degree of care and precaution differing with different circumstances and conditions. And, having full power to prevent or abate nuisances, it must use proper care to keep its highways safe although the peril consist of places or things not upon the street but dangerously near on private property. In-

deed by no other rule would the public be safe in using the streets, for persons living or being in a city have the right to traverse its streets and sidewalks without being required to examine them and their surroundings to ascertain whether passage over them is likely to endanger life or limb. *This being true, by so much the more must the municipality guard dangerous places several feet inside the street line when there is reason to believe that numerous persons are using or likely to use the street in attempting to cross such places.*" (pp. 660, 661.) (Emphasis added.)

Under the circumstances in the case of *Hack v. City of Pittsburg,* supra, the *plaintiff had no other place to walk* except on the street, and it was there held that the city was guilty of actionable negligence for permitting a hole to exist in the cinder street where the plaintiff walked.

It is important to note throughout all of these cases reviewed that at no place was contributory negligence on the part of the pedestrian a factor which affected the decision of the court where the petition was held to be defective. The basis of liability was determined solely on whether or not, under all the facts and circumstances of the given case, the city was guilty of actionable negligence. In the case of *Potter v. City of Coffeyville,* supra, an attempt was made by the defendant, through a motion to make definite and certain, to force the plaintiff to plead contributory negligence. There the motion to make definite and certain was overruled. This cannot be done by a motion to make definite and certain. Contributory negligence is an affirmative defense and must be pleaded by the defendant unless it affirmatively appears from the face of the petition that the plaintiff, as a matter of law, is guilty of contributory negligence. (*Noel v. McCaig,* 174 Kan. 677, 258 P. 2d 234; *Clark v. Hildreth,* 179 Kan. 243, 293 P. 2d 989.)

In *Klipp v. City of Hoyt,* supra, a pedestrian on a dark rainy night, when the street lamps were not lighted, fell from the sidewalk into the street which was fifteen inches lower. In reviewing a demurrer to the *evidence* it was stated:

". . . a pedestrian may use a defective street or sidewalk, knowing its condition, without being guilty of contributory negligence, and may do so after dark. The question always is, whether or not under all the circumstances the pedestrian exercised due care. In this case the question was properly submitted to the jury." (p. 18.)

The four factors advanced by the defendant in the form of questions, whereby it urged the cases could be distinguished, as a group focus attention upon the conduct of the plaintiff, a pedestrian. As

such, they are designed primarily to inject contributory negligence into these cases. This is not consistent with the law of the cases herein reviewed. Only the second question put by the defendant is wholly free from this objection.

An attempt to summarize the law presented by the cases herein reviewed would only lead to confusion, since in each case all of the particular facts and circumstances must be considered. We find these cases consistent with each other in their application of the general law of negligence and adhere to them. Generalized statements of the law have been emphasized throughout this opinion as they apply to the facts of the particular case reviewed.

The element of notice to the city of a defect in cases of this type cannot be overlooked. In the instant case the allegations in the petition are sufficient to impart knowledge of the defect to the city. In some cases it is not as simple. It was stated in *Gilmore v. Kansas City*, supra:

"Did the city have notice of the defect? . . . the general rule is that actual notice is not required where the defect was caused by the city itself or by persons for whose acts it is responsible. Perhaps it would be more accurate to say that in such cases notice is implied. (25 Am. Jur. 729; 50 A. L. R. 1193; 43 C. J. 1042; *Tepfer v. City of Wichita*, 90 Kan. 718, 721 *et seq.*, 136 Pac. 317.) Furthermore, assuming that the hole was caused by the removal of an electric light pole and inadequate provision to take care of it, it would be hard to say that the jury could not reasonably conclude from the evidence that the hole had been there a sufficient time to give constructive notice." (pp. 556, 557.)

The principal case upon which the defendant relies is *Mast v. City of Galena*, 168 Kan. 628, 215 P. 2d 152. The defendant asserts that if the petition in the instant case is held good, it will be necessary to overrule the *Mast* case. Let us see. The allegations of the two petitions are very similar in many respects. They both allege a dangerous and defective condition existing in the parking between the sidewalk and the street. Both involve a covering over a water meter. In the *Mast* case the petition alleged that about 7:30 o'clock p. m. on the 19th day of October, 1942, the plaintiff walked from the curb to the sidewalk which ran parallel with the street, and as she neared the sidewalk she stepped on a thin and worn-out tin lid covering a water meter hole about eight feet distant from a perpendicular crosswalk leading from the street to the principal sidewalk. The location of this particular defect was some distance from the busy part of town, being in front of 911 Short Street in the City of Galena. The petition further alleged

that as the plaintiff put her weight on the lid, it was insufficient in strength and so worn and defective that it gave way and dropped her into the hole so that she was injured, and further alleged that the defective condition of the street at the place in question was dangerous for public travel because of the negligently maintained water meter hole which was improperly protected and insufficiently covered. The petition alleged that the city had knowledge of the dangerous condition.

The customary use made of the parking by pedestrians in the instant case is a distinguishing factor. In the *Mast* case the location of the defect was at a place where it was unlikely that pedestrians would use the parking as a place to walk, there being provided a specific small crosswalk for pedestrians just eight feet from the place where the plaintiff received her injuries.

In the instant case the *location* of the defective meter box *was near the Kansas State Teachers College at Emporia, Kansas, and located on a route directly between the college and the tennis courts, which students used regularly.* The location of the lid to this defective water meter box was a mere nine and one-half inches from the edge of the sidewalk, and the plaintiff was walking parallel to the sidewalk and on the parking at the time he suffered his injuries by stepping onto the lid of the water meter box which gave way from beneath.

The plaintiff's petition in the instant case must be liberally construed, there having been no attack made against it by a motion to make definite and certain or to strike. The petition describes the meter box cover as "made of metal." Permissible is the construction that this was possibly a solid cast iron metal cover, the type which is frequently placed over water meter boxes, and of sufficient strength to support persons who may walk on it. The petition further alleges that this lid was *flush with the surrounding area and the said metal cover constituted the surface of the parking* at the particular place of its location. The metal cover was in these respects an invitation to pedestrians using the sidewalk in groups to use the meter box lid as a surface upon which to walk. The allegations of the petition liberally construed show that the meter box was apparently stable when observed by a pedestrian, but was actually an unstable cover and in reality a trap, the defect being concealed beneath its surface where the tile was damaged, cracked and broken and did not provide adequate and proper support for the cover.

The allegations of the petition in the instant case further disclose

that the City of Emporia did have knowledge of the existence of this defective condition approximately six weeks prior to the date of the accident.

Under these facts and circumstances the city was bound to anticipate that groups of pedestrians would regularly and customarily travel at the particular place of this serious defect on the sidewalk and parking adjacent thereto. It is thereby charged with a higher degree of care and a greater duty to guard against such serious defect. Under the averments of the petition its failure to exercise that degree of care, caution, diligence and skill that common prudence directs constitutes actionable negligence.

We have little difficulty in concluding that the petition states a cause of action against the defendant under either theory advanced by the plaintiff, and since the liability for negligence under either theory would be identical, it is unnecessary to further burden this opinion.

The decision of the lower court sustaining the demurrer to the petition hereby is reversed with directions to proceed in accordance herewith.