No. 40,694

CLAUD SNYDER, *Appellee,* v. CITY OF CONCORDIA, a Corporation, *Appellant.*

(320 P. 2d 820)

Opinion filed January 25, 1958.

*Clarence Paulsen* and *William B. Buechel,* of Concordia, were on the briefs for appellant.

*Gordon D. Danielson,* of Concordia, and *Fred D. Swoyer,* of Belleville, were on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This appeal arises out of an action for damages resulting from injuries sustained by the plaintiff when he fell into a water meter pit or manhole located in a public sidewalk of the city of Concordia, appellant herein.

On January 10, 1953, the appellee, hereafter referred to as the plaintiff, was an employee in a garage on Seventh Street in the city of Concordia. The garage faced south on Seventh Street which ran east and west. A public sidewalk occupied Seventh Street from the front of the garage to the curb of the street. Approximately in the center of this sidewalk was a manhole cover, located about 20 or 30 feet east of the garage door, which covered a meter pit housing a water meter for the garage. This cover was made of iron, was circular, and was about flush with the surface of the sidewalk. The outer rim of the cover rested on the lip or flange of an iron ring or frame around the top of the manhole. This lip or flange was about 7/16ths of an inch deep.

On January 10, 1953, at approximately 4:30 p. m., the plaintiff, walking upon the sidewalk, stepped upon this manhole cover and when he did so it slipped off, causing plaintiff to fall into the manhole with his right leg. This resulted in serious injuries to his back. The cover as it slid or flew off went into the street under a car. The evidence showed that the lip or flange upon which the cover rested was corroded and held an accumulation of rust, sand and pebbles about one quarter of an inch thick which had so hardened from weathering as not to be removable by pushing upon it with a bare hand. The evidence disclosed that the iron lid or cover was "egg shaped," "warped" or "off balance" and sometimes it would teeter back and forth on the base while in place covering the meter pit in the sidewalk. The evidence disclosed that this lid was made of cast iron which was manufactured in Concordia in 1903, and that all cast iron meter lids in the city of Concordia manufactured by this foundry were warped; that possibly half a dozen meter lids were placed in sidewalks and that some of these lids in the sidewalks had prongs welded on the bottom side to prevent them from coming off. After the accident prongs were welded onto this manhole cover. The evidence does not disclose who welded any of the prongs to the meter lids. At the date of plaintiff's injury this cover had been used over this manhole for a long period of time, probably since 1903.

An employee of the city in its water department removed this lid once each month for the purpose of reading the meter. The meter in this pit was read on December 10, 1952, and on January 13, 1953. In order to read the meter it was necessary to take the lid off. The city devised a system whereby the meter reader was to notify the city office of any defective condition at any meter pit. These meter readers were furnished with meter books which had a column therein for remarks where they were supposed to make notations as to any defects in or at the meter pits. The city had no inspection service on these meter pits other than the meter man who read the meter each month.

As a result of the injuries to the plaintiff's back he underwent surgery for fusion of the spine. This surgery was unsuccessful. The testimony disclosed that it would be necessary for the plaintiff to undergo another like operation in the future. If he did not he would be permanently disabled for life. There was also testimony that the chance of the next operation being successful was fifty-fifty and that until the next operation was performed successfully the plaintiff would require constant medical attention, medication and narcotics to relieve his pain and would be unable to engage in any manual labor.

This case was tried before a jury, which returned a general verdict for the plaintiff in the amount of $7,000.00. Special questions were submitted to the jury and answered as follows:

"1. Was the cover improperly seated on the manhole on January 10, 1953?
Answer: Yes

"2. Did the manhole constitute a defective and dangerous condition within the public sidewalk on January 10, 1953?
Answer: Yes

"3. If you find that the sidewalk was defective, state whether the defect was patent (viz. apparent and visible) or latent (viz. concealed).
Answer: Latent

"4. If you answer question No. 2 'Yes', state whether any responsible city officer or agent had actual knowledge of the defect and a reasonable opportunity to repair it; and if so, name the officer or agent.
Answer: No officer or Agent Responsible.

"5. If your answer to question No. 2 is 'Yes', and your answer to question No. 4 is 'No', then state: (a) how long the defect had existed before January 10, 1953, and (b) whether that was long enough that the city should have learned of it and had it repaired before January 10, 1953.
Answer: (a) Long enough for Debris to Accumulate
(b) Yes

"6. If you find for the plaintiff, and allow him damages, state how much you allow for:

    (*a*) Medical Expenses ..................................... $1500.00
    (*b*) Loss of time since January 10, 1953...................... $2000.00
    (*c*) Loss of future earning capacity.................... ....... $3500.00
    (*d*) Pain and suffering...................................... $7000.00"

The jury informed the court that the amount listed under "Pain and suffering" was a mistake and was meant to be total damages of $7,000.00. This is not in dispute on appeal.

The jury prior to rendering its verdict and giving its answers to the special questions was instructed by the court. Among the instructions was No. 6, which reads:

"The plaintiff has the burden of proving by a preponderance of the evidence,

"1st. That he was injured by falling into a manhole as alleged in his amended petition;

"2nd. That the condition of the manhole cover on January 10th, 1953, constituted a defect as to make the sidewalk not reasonably safe for pedestrian traffic;

"3rd. That the City or its officers had actual knowledge of the defect, with an opportunity to repair it, or that if it had no actual knowledge, the defect was patent and had existed long enough that the city should have known of its dangerous condition.

"If the plaintiff has proved the above elements to your satisfaction by a preponderance of the evidence, and was without negligence on his part which contributed to or was the proximate cause of his injury, if any, your verdict should be for the plaintiff. If the plaintiff has not sustained such burden of proof, your verdict should be for defendant.

"In this connection, you are instructed where a defect in a sidewalk was caused by the City, or by those for whose acts the City is responsible, notice is implied, and no proof of notice to the City of the defect is required."

The city's objection to the last sentence of instruction No. 6, specified as error, has been abandoned. The jury's answer to question No. 5(a) has removed this question from the case. And we note in passing that the plaintiff does not contend the defect in the sidewalk was caused by the city. This is spoken of as misfeasance on the part of the city in some of the cases hereafter cited.

The city filed a motion for a new trial; a motion to set aside the answer to special question 6(a) on the ground that it was not supported by the evidence and is in excess of the amount pleaded by the plaintiff in his amended petition; and a motion for judgment notwithstanding the general verdict on the ground that the special findings of the jury are inconsistent with each other and with the

general verdict and compel a judgment for the defendant. These motions were overruled and judgment was entered on the verdict. The city appealed from the judgment and all adverse rulings of the trial court.

The general rules of law which impose tort liability upon a city for injuries to persons resulting from defects of the streets or sidewalks are well settled. To injuries resulting from such defects the doctrine of governmental immunity does not apply. We shall cite only a few of the cases which have undertaken to review the law and accumulate the cases: *Blankenship v. Kansas City*, 156 Kan. 607, 135 P. 2d 538; *Taggart v. Kansas City*, 156 Kan. 478, 134 P. 2d 417; *Smith v. Kansas City*, 158 Kan. 213, 146 P. 2d 660; *Smith v. Krebs*, 166 Kan. 586, 203 P. 2d 215; and *Dunn v. City of Emporia*, 181 Kan. 334, 311 P. 2d 296.

We shall not fret over the law as stated in instruction No. 6, (But see, *Billings v. City of Wichita*, 144 Kan. 742, 62 P. 2d 869; *Kansas City v. Bradbury*, 45 Kan. 381, 25 Pac. 889; and *Jansen v. City of Atchison*, 16 Kan. 358) which, except for the last sentence (now immaterial), was given by the court to the jury without objection at the time of the trial or thereafter. The record does not disclose that any request was made by the plaintiff for other instructions. Instructions to the jury, unobjected to directly or by a request for other instructions, become the law of the particular case and are controlling on appeal. (*Wingert v. Mouse*, 174 Kan. 239, 255 P. 2d 1007; *Smith v. Bassett*, 159 Kan. 128, 152 P. 2d 794; *Montague v. Burgerhoff*, 152 Kan. 124, 102 P. 2d 1031; and *Thogmartin v. Koppel*, 145 Kan. 347, 65 P. 2d 571.)

Once this is recognized, only two questions remain. The first is whether the special findings can be harmonized with each other, and if so, do they sustain the general verdict of the plaintiff? The answer to this question is found in the application of definitely established principles. The findings must be so construed as to harmonize them with each other and with the general verdict where it is reasonably possible to do so. This rule necessarily demands consideration of all findings as a unit and obviously prohibits consideration of any of them separately or by selected or isolated groups. Where the special findings are fairly susceptible of more than one interpretation, the one which harmonizes with the general verdict should be adopted rather than the one which points to in-

consistency. (*Billings v. City of Wichita,* supra; and *Montague v. Burgerhoff,* supra, including cases cited therein. See, also, *Wingert v. Mouse,* supra.)

The appellant city contends in this case that: (1) If the defect is a *patent* one, the notice to the city of the defect can be either actual or constructive; but (2) If the defect is *latent,* the notice to the city of the defect must be actual. In other words, there is really no such thing as constructive notice of a latent defect. The city then says the jury found that the sidewalk defect was latent (answer to question No. 3) and that the city had no actual knowledge of it (answer to question No. 4).

Question No. 3 is important enough to be repeated: "If you find that the *sidewalk was defective,* state whether the defect was *patent* (viz. apparent and visible) or *latent* (viz. concealed)." (Emphasis added.) This question is complete and defines the meaning of the important words that may be misleading to a jury. Its emphasis is on the *sidewalk* as a way for foot travel. The natural inference is that the jury must answer the question as a passerby on the sidewalk would view the meter cover in the sidewalk. The jury answered that the defect was "latent." That is, to one walking on the sidewalk the defect was concealed. Plaintiff testified that before he stepped on the lid there was no defect apparent. But, was the defect concealed from the city?

No special inquiry was directed to the jury on this point which is a vital issue. What facts and circumstances are presented by the uncontradicted evidence in this case? The city clerk, John Whitney, was called to testify for both the plaintiff and the city. He had been a water meter reader and also a water cashier prior to becoming city clerk. While testifying as a witness for the city, he stated that the city employee who reads the water meter is the only person who inspects the meter pits; that he is supposed to inspect it every month when he reads the meter; and that the city has no other inspection service on water meter pits. All witnesses, both for the city and the plaintiff, acknowledged the warped condition of the lid which was admitted to be a defect in manufacture. There was evidence that the cover to the water meter pit was improperly seated for at least a year and a half. The jury by its answer to question No. 5(a) inferentially found that debris had accumulated on the flange where the manhole cover rested; that it had been there long enough that the city should have learned of

the defect and had it repaired before plaintiff's injury; and that such accumulation of debris was a contributory factor which made the sidewalk defective. The day upon which the plaintiff was injured was clear and the sidewalk was dry. This fact is not disputed.

To the city employee responsible for inspecting the meter pit and manhole cover as he lifted it from its base each month to read the meter, the defect was apparent and visible. It was *patent*. If he did not see the condition which made this particular lid a defect in the sidewalk, he should have seen it because it was there to be seen.

Under these circumstances, notice of a defect in a public sidewalk to an employee of the city water department, whether such notice is actual or constructive, is imputed to the city. (63 C. J. S., Municipal Corporations, § 833[c], p. 175.) Where the defect is patent to such employee it is patent to the city.

It may be argued that this is inconsistent with the special findings of the jury in question No. 4. The jury's answer to question No. 4 in and of itself is ambiguous. When read with question No. 5, it must be construed as a finding that no responsible city officer or agent had *actual knowledge* of the defect in the sidewalk. This must be viewed in the light of the evidence. Both the city clerk and the city engineer, who was also superintendent of the waterworks, *were named* and testified as city officers. The only other officer mentioned in the record was the city manager. (Question No. 4 asked the jury to *name* the officer or agent.) The clerk testified that he had no report of a defect from the meter reader. Ernest W. Powell said he had been city engineer and superintendent of the waterworks for approximately sixteen years, and testified that when a defect in a water meter pit is reported to his office, the practice is to send out a form letter to the owner, notifying him and calling his attention to the various defects; that if the property owner does not repair the defect after receiving the form letter, the city *does not* repair it; and that he had not received a complaint of a defective meter pit, and had not even received notice of plaintiff's injury from falling into this water meter pit until approximately two years after the injury. He testified:

"Q. Now, as water commissioner and the City Engineer, can you explain to this Court and jury why you did not get notified as to the injury, which occurred approximately two years before?

"A. No, I don't know. It was somewhat of an unusual procedure, I'd say.

"Q. Well now, in this particular case, the City Manager had been notified and had a written notice that there had been an injury, you hadn't heard of it for two years, is that correct?

"A. That's right."

Without question the jury found by its answer to question No. 4 that the titled city officials or those ultimately responsible did not have *actual* notice. Question No. 4 did not touch upon constructive notice even if it were construed to include the meter reader.

On this state of the record, under all the facts and circumstances, the special findings are consistent with each other and sustain the general verdict. In a situation such as this, a general verdict *imports* a *finding* upon all issues in the case not inconsistent with the special findings. (*Koch v. Suttle,* 180 Kan. 603, 306 P. 2d 123; and *Sheeley Baking Co. v. Suddarth,* 172 Kan. 533, 241 P. 2d 496.)

In this case plaintiff's right to recover was predicated upon the alleged negligence of the city, not in constructing the sidewalk originally, but in failing to maintain it in a reasonably safe condition. Since negligence is never presumed plaintiff had the burden of proving the alleged negligence. The court instructed generally on the law of negligence and specifically on proof of negligence by circumstantial evidence.

The general verdict, therefore, imports that the jury found the plaintiff sustained the burden of proof in accordance with all of the instructions given as to the negligence of the city and in accordance with instruction No. 6. Under the latter the jury found that as to the city the defect in the sidewalk was *patent,* and it was proper to find that the city had either actual or constructive notice of such defect and a reasonable time in which to repair it before the occurrence of the injury to the plaintiff for which the action was brought. (*Blankenship v. Kansas City,* supra.) Upon all the facts and circumstances presented by the record in this case, we cannot say as a matter of law that the evidence did not support the jury's special findings No. 5(a) and (b).

Constructive notice to a city of a defect in the public sidewalk is sufficient to impose liability on a city, assuming all other conditions are met. Here, the city meter reader, the only person responsible for inspection of water meter pits, who could and should have seen the defect each month, for a sufficient period of time to give the city ample opportunity to remedy the defect, is charged with actually having seen it. He was duty bound and was instructed by appellant city to notify his superiors of any defect.

His negligence in remaining silent or ignorant, is negligence of his employer. This negligence, of remaining ignorant when the appellant city had the means of knowledge of the defective condition, is equivalent to actual notice in creating liability. (See, *Jansen v. City of Atchison,* supra; and *Billings v. City of Wichita,* supra.)

We conclude that the answers of the jury to special questions neither compel a judgment for the appellant city, nor do they warrant the granting of a new trial. The trial court properly ruled these motions.

The second question before this court is whether plaintiff may recover $1,500.00 for medical expenses, found by the jury, where the allegations of the petition and the evidence disclose that medical expenses incurred or paid by plaintiff were only $781.45. The record does not disclose the notice of injury and claim filed with the city, which is said to request $3,000.00 medical expense. It was incorporated in the amended petition by reference. It is noted that the total damages for "all such injuries, expenses and losses" of plaintiff are alleged in the amended petition to be $35,000.00 and there is no other itemization of damages, except the $781.45 incurred for medical expenses. It is apparent that the jury allowed for future medical expenses, particularly when construed in the light of the court's instructions. The instructions on medical expenses includes the following: ". . . For these expenditures, if you find for the plaintiff, he would be entitled to recover the amount he actually spent for doctor and hospital bills, and probable future bills . . ." The record discloses no objection to this instruction. It, therefore, becomes the law of the case. The evidence was ample to support the findings of the jury and under the circumstances heretofore disclosed was a proper allowance.

Having found no error in the record presented for review, the judgment of the lower court is affirmed.